No. 40,577

J. A. RODGERS, *Appellee*, v. ARAPAHOE PIPE LINE COMPANY, a corporation; ENAMELEX CORPORATION OF TEXAS, a corporation; SINCLAIR PIPE LINE COMPANY, a corporation, and the affiliates and subsidiaries of said defendants, Arapahoe Pipe Line Company and Sinclair Pipe Line Company, *Appellants*.

(313 P. 2d 740)

Opinion filed July 3, 1957.

*Delmas L. Haney*, of Hays, was on the briefs for appellants.

*Oscar Ostrum* and *J. Eugene Balloun*, of Russell, were on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to foreclose a transporter's lien on an oil pipe line situated in various counties in the States of Kansas and Colorado. The appeal is from an order of the lower court overruling appellants' demurrer to the amended petition of the plaintiff.

The appellants herein, Arapahoe Pipe Line Company, a corporation, and Sinclair Pipe Line Company, a corporation, will be referred to as Arapahoe and Sinclair, respectively, or as appellants. The appellee, J. A. Rodgers, plaintiff below, will be referred to as appellee. The defendant, Enamelex Corporation of Texas, a corporation, will be referred to as Enamelex.

The amended petition in substance alleges that Arapahoe is a subsidiary of Sinclair and is the owner of an oil pipe line situated in the States of Kansas and Colorado, running from a point near Sterling in Logan County, Colorado, to a point near Independence in Montgomery County, Kansas, passing through many counties between said points.

The amended petition further alleges that the appellant, Arapahoe, was constructing said pipe line in 1954 and entered into a contract with Enamelex as its agent to furnish pipe coating or enamel to be used in said pipe line; that Enamelex, as agent of Arapahoe, contracted with appellee to furnish transportation for this pipe coating or enamel to various points along said pipe line; that the contract by and between Enamelex and appellee was in the form of two separate written agreements on two trucks and trailers of appellee,

coupled with an oral contract for the employment of appellee as driver of one of the trucks, to insure transportation and delivery of the pipe coating or enamel, a product of Enamelex, from its points of storage to points along the route of the pipe line; that all of said contracts constituted one single indivisible transaction; that appellee, under and by virtue of said express contracts, hauled pipe coating or enamel to various points along said pipe line to be used in such construction; that such materials were used in the construction and completion of said pipe line; that Enamelex did not pay the appellee for such hauling and that the appellee is entitled to a transporter's lien on the entire pipe line for such hauling, based upon verified lien statements and accounts properly filed and recorded in the various counties in Kansas and Colorado through which the pipe line runs. Pertinent portions of the seven-page amended petition will be detailed as the opinion progresses.

It must be noted at this point that Enamelex was named as a party defendant in the amended petition but did not take an appeal to this court.

The questions involved as appellants present them are:

## I.

Does a transporter's lien as provided for by G. S. 1949, 55-212, 213 and 215, as amended, cover and provide a lien against an oil and gas pipe line?

## II.

Does the amended petition state facts sufficient to establish a cause of action against the appellants for either judgment *in rem* and foreclosure or for a money judgment?

G. S. 1949, 55-212 (*b*), provides:

"*The term 'oil-field equipment'* means *oil-field supplies,* oil-field machinery, *materials,* heavy machinery, buildings, tubing, tanks, boilers, engines, casing, wirelines, sucker rods, *oil pipe lines,* gas pipe lines *and all other material used in* digging, drilling, torpedoing, operating, *completing,* maintaining or repairing *any such* oil or gas wells or *oil pipe lines* or gas pipe lines, or in the construction or dismantling of refineries, casing-head gasoline plant and carbon black plants." (Emphasis added.)

G. S. 1949, 55-213, provides:

"Any person who transports or hauls *oil-field equipment under express contract with the owner* or operator *of* any gas or oil leasehold interest in real property, or the owner or operator of any gas pipe line or *oil pipe line* or the owner of any oil-field equipment and material, *or with the* trustee, *agent,* or receiver *of any such owner, shall have a lien upon interest of such owner in the*

*oil-field equipment so transported and hauled. Said lien shall include, in addition to the charge for hauling or transporting, labor performed, or materials used and expended in the transporting,* erecting, dismantling, loading and unloading of any oil-field machinery, equipment or *supplies hauled or transported and shall be of equal standing with the contractor's lien provided by section 55-207 of the General Statutes of 1935."* (Emphasis added.)

## G. S. 1955 Supp., 55-214, provides:

"Any person entitled to file a lien as provided for in this act, shall within one hundred twenty (120) days after the oil-field equipment was transported and delivered, file a statement in the office of the clerk of the district court of such county where such oil-field equipment was delivered, and at the time of filing such statement the claimant shall serve a copy of said statement upon the owner thereof, or upon the trustee, agent, or receiver of any such owner by mailing a copy of such statement to the said owner or to the trustee, agent, or receiver of such owner by registered mail to his or their last known address. That after the filing and service of such notice as heretofore provided, it shall be the duty of any such owner, trustee, agent, or receiver of any such owner *to notify in writing any person who has a lien upon any* such oil-field equipment and materials *before removing the same from the leasehold* to which the lien claimant delivered said oil-field equipment and materials. Such statement shall include the amount claimed and the items thereof described *as definitely as practicable, the name of the owner, the* name of the contractor, the name of the claimant and a full description of the property subject to the lien, verified by affidavit. *In the event such oil-field equipment* or any part thereof *has been removed* from the county in which it was originally delivered into another county within the state, any person entitled to file a lien as provided for in this act, may within thirty (30) days after that person has received notice that such oil-field equipment or any part thereof has been removed from the county in which it was originally delivered, file in the office of the clerk of the district court of such county, a copy of the lien which has heretofore been filed in the county in which such property was originally transported and delivered. The lien provided for hereunder shall not be prior to any valid and existing chattel mortgage of record." (Emphasis added.)

It is the contention of the appellants that the foregoing statutes are intended to and cover only specific equipment used in and about an oil-field in connection with the construction and operation of oil and gas leases and oil and gas pipe lines. They further contend that the statutes are intended to and do cover the transporting of drilling rigs, drill-in units, bulldozers, light plants, pipe pulling rigs, oil servicing company equipment, ditch diggers, bladers, scrapers, and all other equipment used in the construction, drilling, repairing or maintenance of an oil and gas lease or oil and gas pipe lines, and do not cover the transportation of items furnished or

supplied to be a permanent part of the oil and gas well or oil and gas pipe line.

The appellants cite G. S. 1949, 55-207, the general oil-field lien statute, which provides that any person who furnishes materials or labor shall have a lien upon the *whole* of such leasehold or oil pipe line or gas pipe line, etc. In contrast they point out that the act establishing the lien of the transporter does not specifically give a lien on the "whole" of the leasehold, oil pipe line or gas pipe line for the transportation or hauling of items which become a permanent part thereof.

They further cite G. S. 1955 Supp., 55-214, and specifically note that the section refers to "oil-field equipment delivered" and provides that the lien holder shall be notified before the "oil-field equipment" and materials are removed from the leasehold to which the lien claimant delivered the oil-field equipment and materials.

The lien of a transporter of oil-field equipment is purely a statutory lien which confers special privileges and should be strictly construed. This court in *Bridgeport Machine Co. v. McKnab*, 136 Kan. 781, 18 P. 2d 186, sets forth the rule of construction pertaining to lien statutes as follows:

"Oil and gas lien laws like other lien laws of this state are purely statutory and as they confer special privileges they should be strictly construed, so that in determining to whom and for what a lien statute gives a lien, a strict construction should generally apply, but after interpreting it to entitle a party to a lien for a particular article or thing, then a liberal interpretation should generally be given as to its enforcement so as to promote the object to be effected." (Syl. 1.)

The lien of a transporter of oil-field equipment is analogous to the mechanic's lien. Both are creatures of statute and in derogation of the common law. The basis upon which this class of legislation rests is well stated by Justice Brandeis in *Piedmont Coal Co. v. Seaboard Fisheries Co.*, 254 U. S. 1, 41 S. Ct. 1, 65 L. Ed. 97:

". . . The principle upon which the mechanic's lien rests is, in a sense, that of unjust enrichment. Ordinarily, it is the equity arising from assumed enhancement in value resulting from work or materials expended upon the property without payment therefor which is laid hold of to protect workmen and others who, it is assumed, are especially deserving, would ordinarily fail to provide by agreement for their own protection and would often be unable to do so." (pp. 9 and 10.)

This court has used similar language in *Given v. Campbell*, 127 Kan. 378, 273 Pac. 442:

"The general theory underlying lien statutes is that labor, material and supplies which are devoted to the construction of an improvement to realty, whether building, oil-and-gas well, or whatnot, add an actual value to the property, and *in consequence the property may justly be bound as security to pay for contributions enhancing its value . . ."* (p. 380.)

We think the construction which appellants seek to have placed upon the legislative act heretofore quoted is too narrow. Obviously, under 55-213, *supra,* a lien is given to one who transports oil-field equipment, including the cost of labor performed and materials expended in the transportation. By definition in 55-212(b), *supra,* oil-field equipment includes oil-field supplies and materials used in completing oil pipe lines and, significantly, the definition includes *oil pipe lines.*

The primary element of a pipe line is the metal tubing or cast iron pipe divided into convenient lengths or joints. In the assembly of the metal tubing into a pipe line jointing material is needed to seal the line and a protective coating is needed to guard against corrosion from moisture and chemicals in the soil. These materials and supplies are clearly covered by the term "oil-field equipment" and become inseparable once the pipe line has been constructed and installed. None of these materials used in the line can be restored to the original form in which they were transported and therefore cannot be "removed" in the sense that the term is used in 55-214, *supra.*

The provisions of 55-214, *supra,* do not by their wording establish the lien created. They do not indicate *for what* the statute gives a lien or *to whom* the statute gives a lien. The very wording which begins "Any person entitled to file a lien as provided for in this act" presupposes that the lien has been established aside from this particular section. Furthermore, the first sentence of 55-214, *supra,* is complete in and of itself. It provides the time within which the lien of a transporter of oil-field equipment must be filed. Provision is then made in the event that oil-field equipment is to be removed *from a leasehold interest* to which the lien claimant delivered them that the party affected by the lien give notice before removing the same. It further provides the procedure to protect a lien claimant where oil-field equipment has been removed from the county in which it was originally delivered. That oil pipe lines are normally constructed on an easement and not a leasehold interest in land is indication that the legislature did not intend by 55-214, *supra,* to limit the scope of the lien.

The provisions after the first sentence in 55-214, *supra*, were intended by the legislature to protect a lien claimant on such items, upon which a lien had been established by other provisions of the act, that could be removed after the lien had become attached. An oil pipe line, regardless of its length or size, is defined as *oil-field equipment* upon which a lien attaches when the conditions prescribed by the act are met. An absurd construction cannot be placed upon the act by requiring one person as defined in the act to transport each and every item going into the construction of an oil pipe line before a lien attaches. Thus, a reasonable interpretation of the act makes it mandatory that the transporter of any part of the materials or supplies which go into the construction of an oil pipe line have a lien upon the indivisible whole. This interpretation is consistent with the rule of construction heretofore noted. *To whom and for what* the lien statute gives a lien is clear from the act itself under rules of strict construction.

In *Meyer v. Latta*, 178 Kan. 316, 285 P. 2d 782, the provisions of G. S. 1949, 55-207, were before the court for consideration. It was there held that a lien in favor of the driller, laborers or materialmen attached to the drilling rig furnished by the owner of the lease without regard to whether he owned such drilling rig, or whether he borrowed it, or rented it.

The practical application of the *Meyer* case to the instant case is the rule of construction—that once a right to a lien exists, a liberal construction is applied to the statute. This court there held that a lien will attach to all property on the leasehold at the time the lien is filed, construing G. S. 1949, 55-207.

A good discussion of many Kansas oil-field lien cases is undertaken in the *Meyer* case, some of which are cited by the parties in the instant case. Further discussion of these cases will not be undertaken here since reference to the *Meyer* case will suffice.

The extent to which this court has liberalized the mechanic's lien statute is indicated in *Meadows v. Oil Co.*, 108 Kan. 228, 194 Pac. 916; and *Woodmansee v. Oil & Gas Co.*, 113 Kan. 637, 216 Pac. 276.

If appellants' construction were adopted, portions of 55-212(b), *supra*, and 55-213, *supra*, would be emasculated. Persons who transported the equipment and machinery to build the oil pipe line would have a lien, but those who transported the materials from which the oil pipe line itself was constructed would be denied a lien. This could not have been the intention of the legislature.

The appellants argue that 55-213, *supra,* gives a lien upon the interest of the *owner* in the oil-field equipment transported, provided the same is *hauled* or *transported* under an *express contract with the owner.* This is not in accordance with the statute. The provisions of 55-213, *supra,* specifically designate that a person who transports or hauls ". . . oil-field equipment under express contract with the owner . . . or . . . *agent, . . . of any such owner, shall have a lien upon interest of such owner in the oil-field equipment* so transported and hauled. . . ." (Emphasis added.)

On motion of the appellants in the lower court the appellee (plaintiff) was required to make his petition definite and certain by stating which of the three defendants (appellants and Enamelex) made the contract with the appellee and to specifically state with which officer or agent of the defendants such contract was made and whether the same was oral or in writing. The appellee amended his petition to read as follows:

"That between the dates of August 9, 1954, and October 31, 1954, both dates inclusive, plaintiff, at the special instance and request of defendants, and each of them, and particularly the Arapahoe, through its respective officers and agents thereunto duly authorized, whose names are unkown to plaintiff but well known to defendants, *and particularly through the Enamelex, as the agent acting for and on behalf of the defendant, the Arapahoe,* but whether such authority from said Arapahoe was oral or in writing, is unknown to plaintiff but well known to said Arapahoe and said Enamelex, and acting by and under plaintiff's three separate contracts with said Enamelex, as hereinafter set forth, performed certain labor and furnished, transported, hauled and delivered such oil field equipment, materials and supplies, consisting of pipe coating and enamel, and also advanced various expenses in connection therewith as a transporter of oil field equipment for and on behalf of *said defendants, Arapahoe, and Enamelex acting as the agent for and on behalf of said Arapahoe,* said labor having been performed and said oil field equipment, material and supplies having been furnished, transported, hauled, and delivered under and by virtue of said three express contracts between plaintiff and *said Enamelex, acting as agent for and on behalf of said Arapahoe, . . .*" (Emphasis added.)

At no time after the foregoing amendment was made to the petition did appellants attack the allegations of agency. Therefore, although such allegations are conclusions, they are sufficient when attacked by demurrer under liberal rules of construction, particularly in the absence of a motion to make definite and certain. Under such circumstances the question of the agent's authority is one of evidence, not of pleading. (*Donie v. Associated Co., Inc.,* 173 Kan.

753, 757, 252 P. 2d 609; *Rogers v. Beiderwell,* 175 Kan. 223, 262 P. 2d 814; and *Rule v. Mitchell,* 173 Kan. 803, 806, 252 P. 2d 924.)

Does the amended petition state facts sufficient to establish a cause of action against the appellants for either a judgment *in rem* and foreclosure or a money judgment?

This question is closely interwoven with the first question and much of the discussion heretofore presented is applicable thereto.

The principal contention of the appellants on this point is that the items listed in the account of the verified lien statement are non-lienable items. They argue that they are simply items of expense, citing *Wilkinson v. Pacific Mid-West Oil Co.,* 152 Kan. 712, 107 P. 2d 726; and *Bridgeport Machine Co. v. McKnab,* supra.

Appellee, in his amended petition, concerning the three express contracts, alleges that:

". . . two of said contracts being in writing and bearing date of August 9, 1954, said two written contracts respectively providing for the lease by plaintiff to said Enamelex, of two trucks and/or truck tractors owned by plaintiff with trailer attached thereto, at a net compensation and rental to be paid to plaintiff of Twenty-three cents ($.23) per mile for each, all as more specifically set out and provided in said two written contracts, a copy of each of which, marked Exhibits 'B' and 'C' respectively, and being portions of combined Exhibit 'I', is annexed to plaintiff's petition and made a part hereof by reference, for all purposes, and the other of said contracts having been made orally by and between plaintiff and said Enamelex, on or about said 9th day of August, 1954, all of said contracts being and constituting one single, indivisible transaction by which said corporation employed plaintiff as the driver of one of said trucks at a salary of Forty Dollars ($40.00) per week, in addition to the leasing of said truck and/or truck tractor and trailer from plaintiff and in lieu of employing some third person as driver, and that said written contracts for the leasing and use of said trucks and trailers for transportation purposes as hereinbefore set forth, were conditioned upon said oral contract for the employment of plaintiff as one of the drivers thereof as an employee of said defendant, Enamelex; that such leasing and employment continued for a period of twelve (12) weeks, beginning August 9, 1954, and ending on October 31, 1954, said trucks and/or truck tractors and trailers having been driven and used during said period of time exclusively in the hauling of loads of pipe coating and enamel sold by said Enamelex under its said contract with defendants, Sinclair Pipe Line Company and Arapahoe and/or its agents and contractors, same having been hauled from various places and for long distances to said pipe line and gathering system, . . ."

The two written contracts, in form set up as truck leasing agreements, specifically provided that the *lessee,* Enamelex, was to make the necessary repairs, provide all fuel necessary to the operation of the leased trucks, and carry public liability and property damage to adequately cover the equipment being leased.

The plaintiff (appellee) specifically incorporated in the amended petition his verified account with Enamelex as follows:

"EXHIBIT 'A'

J. A. Rodgers
803 Wilkes Street
Houston, Texas
RE:  Arapahoe-Transcontinental-
Sinclair Pipe Line job.

"In account with
Enamelex Corporation of Texas
P. O. Box 18271
Houston 23, Texas

| | |
|---|---:|
| "Salary payable to J. A. Rodgers (only) for 12 weeks at $40.00 per week (8-9-54 to 10-31-54) .......... | $480.00 |
| "Use of One (1) 1950 Mack Truck, Motor No. EN531A-25-55, License No. 9J 7885 and One (1) Shop Built Trailer, License No. 7T3329, 15,892 miles at 23 cents per mile ............................. | 3,655.16 |
| "Use of One (1) 1949 White Truck Tractor, Motor No. 150A 30635, License No. 9J 4642 and One (1) Shop Built Trailer, License No. 7T 1859, 15,791 miles at 23 cents per mile............................. | 3,631.93 |
| "3,585.2 gallons of gasoline, (exclusive of gasoline purchased by courtesy card furnished only portion of time) ........................................ | 763.74 |
| "175 quarts of oil (exclusive of oil purchased by courtesy card furnished only portion of time).......... | 48.60 |
| "Transmission grease and lubrication (exclusive of grease and lubrication purchased by courtesy card furnished only portion of time)................... | 67.89 |
| "Repairs to trucks and trailers (exclusive of 3 new tires purchased at net price of $267.40)............... | 1,153.05 |
| "State Motor Carrier Taxes at Ports of Entry.......... | 393.02 |
| "Weighing Charges .............................. | 25.00 |
| "Permit Fees .................................. | 20.00 |
| Total Amount ............................. | $10,238.39 |

"Credits for amounts paid:

| | | |
|---|---:|---:|
| Salary payments to J. A. Rodgers for 9 weeks .......................... | $360.00 | |
| "Payments to J. A. Rodgers under 2 written lease contracts ...................... | 2,499.18 | |
| Total amount paid......................... | | 2,859.18 |
| "Balance due and unpaid after allowing all just and lawful offsets, payments and credits.................. | | 7,379.21" |

All of the items of expense above enumerated were paid by the appellee in the operation of said trucks while transporting the pipe coating and enamel to various points along the pipe line.

The amended petition, liberally construed as we must on demurrer in this case, fairly imports that the appellee owned two trucks and trailers and was in the transportation business; that Enamelex needed to have its product, pipe coating, transported to the pipe line of Arapahoe. It needed transportation. Appellee had transportation to sell. The express contract entered into was alleged in substance in the amended petition as having three component parts, two written leasing agreements and an oral contract— all taken together formed the real agreement between the parties under which appellee became the transporter of the materials which Enamelex, as the agent of Arapahoe, furnished for the completion of the pipe line.

Appellants' argument that these were items of expense and not lienable is refuted by the facts alleged, liberally construed in favor of the appellee. Enamelex, under the so-called lease contracts, was supposed to provide all the operating expenses and repairs for the trucks and trailers but failed to do so. Enamelex may have had its own reasons for setting up the contract in the form of a lease of the trucks and trailers and the employment of appellee as one of the drivers at a nominal wage.

Enamelex's failure to pay the expenses which it was required to furnish, if the so-called leasing contracts were *bona fide*, coupled with the fact that appellee at a nominal wage, which was not paid in full, was in charge and responsible to see that the trucks were kept fueled and greased and in operating repair, including the payment of state motor carrier taxes at ports of entry, weighing charges and permit fees at appellee's own expense, all lead to the inescapable conclusion, as garnered from the amended petition, that appellee was the transporter of the materials at an agreed contract price calculated from the two written leasing contracts and the oral agreement.

Various arguments of appellants indicating the nebulous character of appellee's claim to a lien have not been overlooked. The trouble with these arguments lies in the fact that they are essentially matters of defense, whereas here we are dealing with allegations of an amended petition which for purposes of the demurrer are to be taken as true. We are not at liberty to speculate on the evidence.

In conclusion, we hold that the amended petition of the appellee alleges sufficient facts to state a cause of action as a transporter of oil-field equipment entitled to a lien on the oil pipe line of Arapahoe for unpaid transportation charges on material and supplies used in the construction of said oil pipe line, pursuant to the provisions of G. S. 1949, 55-212($b$) and 213.

The judgment of the lower court overruling the demurrer of appellants should be and hereby is affirmed.