No. 41,426

J. A. RODGERS, *Appellee,* v. ARAPAHOE PIPE LINE COMPANY, a corporation; ENAMELEX CORPORATION OF TEXAS, a corporation; SINCLAIR PIPE LINE COMPANY, a corporation, and the affiliates and subsidiaries of said defendants, Arapahoe Pipe Line Company and Sinclair Pipe Line Company, *Appellants.*

(345 P. 2d 702)

Opinion filed November 7, 1959.

*Delmas L. Haney,* of Hays, and *Hugh McGee,* of Houston, Texas, argued the cause, and *Delmas L. Haney* was on the briefs for appellants.

*J. Eugene Balloum,* of Russell, argued the cause, and *Oscar Ostrum* of Russell and *Gilbert P. Howard,* of Dallas, Texas, were with him on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: This was an action to foreclose a transporter's lien on an oil pipe line situated in various counties in the state of Kansas pursuant to G. S. 1949, 55-212, 213 and G. S. 1957 Supp. 55-214.

For the purpose of identifying the parties, the appellants, Arapahoe Pipe Line Company, a corporation, and Sinclair Pipe Line Company, a corporation, are referred to as Arapahoe, and Sinclair, or as appellants. The appellee, J. A. Rodgers, plaintiff below, is referred to as Rodgers. The defendant, Enamelex Corporation of Texas, a corporation, is referred to as Enamelex. Since it filed no appearance or pleading in the district court, Enamelex is not involved in this appeal.

Trial was by the court which found that Arapahoe purchased materials constituting oil-field equipment as defined in G. S. 1949, 55-212 at a base price in Kansas City, Missouri, plus the transportation rate to destination points along its pipe line then under construction, for delivery as directed by Arapahoe; that for the purpose of delivering the materials at points of destination, Enamelex was the authorized agent of Arapahoe, and that Rodgers, under an express contract with Enamelex, transported and delivered such materials to destination points and that he was entitled to a transporter's lien against the whole of said pipe line in the state of Kansas pursuant to G. S. 1949, 55-212 and 213, which should be foreclosed. Judgment in rem in the amount of $7,013.80 was entered in favor of the plaintiff in harmony with those findings, and the defendants have appealed.

The case was here in 1957 (*Rodgers v. Arapahoe Pipe Line Co.*, 181 Kan. 579, 313 P. 2d 740). In the interest of brevity, the pleadings of the parties will not be referred to except to say this court determined that Rodgers' petition stated a cause of action, and the question of a supplier's authority as the agent of the purchaser, to contract with a transporter to entitle him to a transporter's lien under G. S. 1949, 55-213, was one of evidence and not of pleading.

Pertinent portions of the evidence are quoted and summarized: In August, 1954, Arapahoe was constructing a pipe line in the states of Kansas and Colorado, running from a point near Sterling in Logan County, Colorado, to a point near Independence in Montgomery County, Kansas. In constructing the pipe line, Arapahoe used asphalt enamel and primer to coat and protect the line.

On July 23, 1954, C. Fred Brehmer, purchasing agent for Arapahoe, placed the following purchase order with Enamelex, which reads in part:

' "ARAPAHOE PIPE LINE COMPANY

Box 460

Independence, Kansas

"Date 7-23-54         REG. No. A-34         ORDER No. 8

To: ENAMELEX CORP OF TEXAS
    P. O. Box 18271
    HOUSTON, 23, TEXAS

Please furnish the following articles subject to all conditions printed hereon including reverse side, and send invoice in Triplicate with Bill of Lading and/or

Express Receipt or freight bill to support transportation charges to Purchasing Department, Box 460, Independence, Kansas, on date of shipment, and ship to:

ARAPAHOE PIPE LINE COMPANY

At    WILL ADVISE                                    c/o
Via

| F. O. B. | TERMS | CHARGE | DELIVERY |
|---|---|---|---|
| Shipping Point Equal W/Kansas City Truck Rate | ½ of 1 % 10 days | | SEE BELOW |

To DESTINATION

Approx. 2700 tons pipe line enamel (X-7510) ............... 40.00 Ton
Approx. 16500 Gals. Primer for Above .....·.................   .55 Gal

DESTINATIONS AND ROUTING TO BE FURNISHED LATER.

ADVISE WHEN YOU CAN COMMENCE SHIPMENTS—HOW MANY TONS PER DAY YOU CAN SHIP, AND WHEN YOU WILL COMPLETE ORDER."

Insufficient materials having been ordered, a second purchase order dated September 21, 1954, was placed to obtain the balance of materials necessary to finish the job. That order is not set out since it is substantially the same as the first with respect to shipping point, terms, charge and delivery which were to "APPLY TO DESTINATION." The only significant difference was that asphalt enamel was priced at $10 a ton rather than $40 a ton. Brehmer testified that the orders placed with Enamelex were "blanket orders against which shipping orders would follow," and that blanket orders were placed on urgent jobs to establish mainly the base price of the product so that a supplier could ready itself with the amount of material required. On July 27, 1954, three days after he placed the first order, Brehmer wrote Enamelex referring to the purchase order of July 23, 1954, and set forth the various destinations in Kansas and Colorado and listed the various tons of enamel and gallons of primer to be shipped to those destinations on that order.

On August 9, 1954, at Houston, Texas, Enamelex and Rodgers entered into two separate written contracts whereby Rodgers leased to Enamelex for a period of one year, two motor trucks and shop-built trailers owned by him and located at Houston. The contracts provided that Enamelex would have complete control of the vehicles; would employ drivers to operate them, and that they would move solely at the direction of Enamelex to pick up and unload orders for the benefit of Enamelex. Rodgers was to receive .23¢

a mile, and Enamelex was to carry public liability and property damage insurance to cover the equipment leased in such amounts as would conform to the laws of any state in which the vehicles might operate. In addition, necessary and ordinary repairs and all fuel necessary to operate the trucks were to be furnished by Enamelex.

Rodgers testified that when the written contracts were executed he was told by an officer of Enamelex that Arapahoe was building a pipe line in Kansas and Colorado and that Enamelex wanted drivers and trucks to haul pipe coating to be used to coat the pipe line. Further, that after the contracts were executed, Enamelex orally employed him at $40 a week to drive one truck, and directed him and his son, whom it employed to drive the other truck, to report to Kansas City, Missouri, and there contact a named asphalt company; and, that "the pick up point on this job would be Kansas City, Missouri."

Rodgers further testified that on August 12, 1954, he commenced hauling pipe coating; that the first trip was to Merino, Colorado; that his son made the first trip and then Enamelex hired one Lindsay who drove the other truck until all deliveries were made along the pipe line; that each truck made some seventeen trips and traveled approximately 15,800 miles; that each delivery was made pursuant to instructions from Enamelex, and that the last trip was made October 26, 1954, to Collyer, Kansas. Further, that after the Collyer delivery, the trucks were driven to Texas, where, on November 5, 1954, Enamelex released and surrendered all its right, title and interest in the two trucks and trailers under the written contracts of August 9, 1954, and that he accepted return of the vehicles and agreed that upon receipt of a check covering the period from September 30, 1954, through October 31, 1954, he would be paid in full all compensation due him under the terms of the leases and that he would release and hold harmless Enamelex from any claim thereunder. Rodgers testified, however, that Enamelex made no accounting to him nor paid him the amount due for that period.

Brehmer was a witness for both Rodgers and the appellants. When asked the meaning of the language "shipping point equal W/Kansas City truck rate to destination" contained in the order of July 23, he stated that "the F. O. B. point as it is written means that a supplier can ship from any point by any means as long as

the consignee only pays the truck rate from Kansas City to destination." He testified that he at no time issued instructions to Enamelex as to the movement, either by rail or by truck, of the material; as to the conduct of the drivers, if moved by truck, or any other matters pertaining to the movement of the material. He further testified that he was not aware Rodgers was hauling any pipe coating, and that he had never heard of Rodgers nor paid any moneys to him nor gave him any shipping instructions. When asked if Enamelex invoiced Arapahoe for cost of material plus the cost of shipping, Brehmer said, *the billing was on a delivered price basis."*

C. E. Dickey, vice president of Arapahoe, testified that he was assistant project manager in constructing the pipe line; that Arapahoe did not authorize Enamelex to act for and on its behalf in any capacity; that the only relationship existing between Arapahoe and Enamelex was that of buyer and seller; that Enamelex billed Arapahoe under the purchase orders "Via Enamelex Truck, F. O. B. Destination"; that it was his impression Enamelex was hauling the material since he saw several trucks during the hauling operations with big "Enamelex Corporation" signs painted on the sides, and assumed they belonged to Enamelex; that the materials ordered from Enamelex were delivered to the pipe line and used in its construction, and that Arapahoe paid Enamelex for all the materials and freight. Further, that freight was "X'd as freight paid" on the invoice, and that he assumed the invoice included freight to destination because penciled notations showed that the cost of material and freight charged equaled the total amount billed, and that was the usual practice of handling invoices.

Since this appeal involves an alleged transporter's lien based upon G. S. 1949, 55-212, 213 and G. S. 1957 Supp. 55-214, we quote pertinent parts of G. S. 1949, 55-213:

> *"Any person who transports or hauls oil-field equipment under express contract with the owner . . . or with the trustee, agent, or receiver of any such owner, shall have a lien upon interest of such owner in the oil-field equipment so transported and hauled . . . "* (Emphasis supplied.)

It is clear that before Rodgers can establish a transporter's lien under the statute, he must allege and prove an express contract with the appellants, or with Enamelex as agent for the appellants, to transport oil-field equipment. It was settled in the former appeal that the materials transported were oil-field equipment within the

meaning of the statute. Since Rodgers makes no contention that he had an express contract with the appellants and it being conceded he had such a contract with Enamelex, the question presented is: Does the evidence establish that Enamelex was the agent of Arapahoe to deliver the pipe coating?

The appellants offered no evidence to contest any item set forth in Rodgers verified lien statement, nor do they here assert that it was not properly filed and written notice served in accordance with the statute. They principally contend that the evidence was wholly insufficient to support the trial court's findings that, for the purpose of delivering the pipe coating, Enamelex was the agent of Arapahoe, and that Rodgers, under express contract with Enamelex, transported and delivered such materials.

Rodgers makes two contentions: First, that Enamelex was the agent of Arapahoe by implication as well as by direct order; and second, that for lien purposes, Enamelex was the agent of Arapahoe by operation of law. In support of his first contention, Rodgers argues that Arapahoe constructs and operates pipe lines, and that Enamelex manufactures pipe coating materials; that neither is in the transportation business, and that he sold transportation to deliver the materials in question. Further, that as a condition for receiving Arapahoe's orders, Enamelex was to make transportation arrangements which it did through its contracts with him; that Arapahoe's orders clearly show the pipe coating was based on prices F. O. B. Kansas City, or shipping points equal thereto; that Arapahoe was to pay the truck rate from Kansas City to destinations furnished by it, and that when the materials were loaded at Kansas City, title passed to Arapahoe, making Enamelex Arapahoe's agent for the purpose of delivering the materials.

As preliminary to discussing the contentions of the parties, we note that actual agency may be either express or implied (*Greep v. Bruns*, 160 Kan. 48, 159 P. 2d 803; *Kennedy v. Atchison*, 162 Kan. 694, 178 P. 2d 987), and where the relationship of principal and agent is in issue, the party relying thereon to establish his claim or demand has the burden of establishing its existence by clear and satisfactory evidence (*Dunlap v. Denison*, 83 Kan. 757, 112 Pac. 598; *Greep v. Bruns*, supra).

To determine whether there is evidence sufficient to show actual agency, the record must be examined to ascertain if the one sought to be charged as principal has delegated authority to the alleged

agent by words which expressly authorize him to do the delegated act. If there is evidence of that character, the authority of the agent is said to be express (*Greep v. Bruns,* supra; 2 Am. Jur., Agency, § 86, p. 70). On the other hand, if there is no express authorization, the evidence must be examined to determine whether the alleged agent possesses implied powers. In that connection, the test is whether, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create an agency, in which event the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency (*Greep v. Bruns,* supra; 2 C. J. S., Agency, § 23, p. 1045).

Our review of the record convinces us there is nothing to indicate that Enamelex was the express agent of Arapahoe to deliver the pipe coating; hence, we examine the evidence to determine whether Enamelex was the agent of Arapahoe by implication. In order for Rodgers to establish such an agency, the terms of the purchase orders must have contemplated sale of the pipe coating at Kansas City, Missouri, vesting title in Arapahoe at that point. In this connection, Rodgers argues that when the pipe coating, based on price F. O. B. shipping point, was placed on the trucks, a completed sale occurred and title to the materials passed to Arapahoe notwithstanding Enamelex was to handle the details of the actual hauling arrangements. He further argues that Arapahoe's reimbursement of the cost of transporting the pipe coating further substantiates Enamelex's implied agency.

We think it manifest from the purchase orders and the circumstances developed by the testimony that the contract between Enamelex and Arapahoe required Enamelex to deliver the pipe coating To DESTINATION, and that title thereto did not pass until it reached that point. The purchase orders obligated Enamelex to furnish pipe coating "F. O. B. shipping point equal W/Kansas City truck rate To DESTINATION," and billings to Arapahoe were on a "delivered price basis." Thus, cost to Arapahoe under the purchase orders and Enamelex's billings was a total of the price of the pipe coating, plus transportation charges to destination. This conclusion is in harmony with our holdings that where the contract provides for a sale F. O. B. the point of destination, the title is generally held not to pass in the absence of a contrary intention between the parties, until the goods have been delivered at the point designated.

(*Brewing Association v. Nipp,* 6 Kan. App. 730, 50 Pac. 956; *Hurst v. Manufacturing Co.* 73 Kan. 422, 85 Pac. 551; *Wing v. Mid-Continent Seeds,* 170 Kan. 242, 225 P. 2d 78; *State of Oklahoma, ex rel., v. H. D. Lee Co.* 174 Kan. 114, 254 P. 2d 291; *Custom Built Homes Co. v. State Comm. of Rev. and Taxation,* 184 Kan. 31, 334 P. 2d 808). See, also, *Hunter v. Kramer,* 71 Kan. 468, 80 Pac. 963, wherein it was said:

". . . The rule, as stated at page 1050 of volume 24 of the American and English Encyclopedia of Law, is as follows:

" 'If by the terms of the contract the seller is required to send or forward or deliver the goods to the buyer, the title and risk remain in the seller until the transportation is at an end or the goods are delivered in accordance with the contract, after which time the title is vested in the buyer'." (l. c. 474.)

Furthermore, delivery was made by Enamelex's trucks, but, insofar as Arapahoe was concerned, could have been made by rail. Moreover, Enamelex was not required to ship the pipe coating from Kansas City. Under the purchase orders it could have shipped the materials from Houston, Chicago, Omaha, Denver, or any other point. But, had shipment been made from those points, cost to Arapahoe would have been the same, that is, the cost of materials plus freight charges equal with Kansas City truck rate To DESTINATION.

We think it clear that under the terms of the purchase orders and the parties performance thereunder, Enamelex was required to deliver the pipe coating To DESTINATION where title then passed to Arapahoe. Consequently, the contention of Rodgers that title to the materials passed at F. O. B. shipping point Kansas City, Missouri, and that Enamelex was the agent of Arapahoe for the purpose of delivering the materials, cannot be sustained.

Rodgers strenuously argues that under the facts and circumstances Enamelex was the agent of Arapahoe, for lien purposes, by operation of law, and relies principally upon *Adair v. Transcontinental Oil Co.,* 184 Kan. 454, 338 P. 2d 79. The point is not well taken. It was Enamelex's duty under the purchase orders to deliver the pipe coating—not Rodgers. Under their written contracts, Enamelex had complete control and direction of the trucks, and, under their oral agreement Rodgers was at most an employee of Enamelex. Under that arrangement it cannot be said that, for lien purposes, the pipe coating was placed in Rodgers' hands for delivery, as the agent of either Enamelex or Arapahoe. Before Rodgers can bring himself within the statute (it being conceded

he had no express contract with Arapahoe), it must appear from the facts and circumstances that Enamelex was the express or implied agent of Arapahoe. As we have seen, Enamelex was not the agent of anyone, particularly Arapahoe.

The word "agent" as used in G. S. 1949, 55-213, authorizing the agent of the owner of oil-field equipment and materials to contract with a transporter to transport or haul such equipment, has reference to an express agency between the owner and the agent, or one which arises by implication from the facts and circumstances of a particular case. In other words, the statute contemplates that the agency relation authorized to exist must arise from the acts and conduct of the parties themselves. In this case no such relationship was shown to exist, and we cannot say that one was created by operation of law.

We have examined the Adair case, *supra*, and other authorities cited by Rodgers, but make no extended review of them. They are of no assistance in answering the present question. The theme of each of them is that if work was done for the benefit of the lessor of real estate or the seller of oil and gas leases, and such person in fact received a benefit, then his interest is subject to lien and the lessee or buyer will be deemed to be an agent, for lien purposes, by operation of law. That is clearly not the situation here presented.

Finding no evidence which tends to support the trial court's finding that, for the purpose of delivering the pipe coating, Enamelex was the agent of Arapahoe, we conclude that finding was erroneous and requires a reversal of the judgment. Accordingly, the judgment of the trial court is reversed with directions to enter judgment for the defendants.

It is so ordered.