798 F.2d 396
 Bankr. L. Rep. P 71,289
In re BRANDING IRON MOTEL, INC., a Kansas Corporation, Debtor.
BRANDING IRON MOTEL, INC., Appellant,
v.
SANDLIAN EQUITY, INC.; Bank of Mid America; Decker
Investments, Inc.; Decker and Associates, Inc.;
Stephen E. Decker; Don Dinning Gallery
of Homes; and Village Realty, Inc., Appellees.
 No. 84-1129.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 4, 1986.
Rehearing Denied Aug. 26, 1986.
 
 Thomas D. Kitch of Fleeson, Gooing, Coulson & Kitch (Gregory J. Stucky of the same firm, David G. Arst of Arst & Arbuckle, and Terry G. Paup, with him, on briefs), Wichita, Kan., for appellant.
 Milo M. Unruh (Edward F. Arn, with him on brief), of Arn, Mullins, Unruh, Kuhn & Wilson, Wichita, Kan., for appellees.
 Before McKAY, LOGAN and BALDOCK, Circuit Judges.
 BALDOCK, Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court reversing the bankruptcy court's ruling that Branding Iron Motel's president did not have the authority to bind the motel to a note and mortgage. The district court conducted a de novo hearing, adopted part of the bankruptcy court's findings, but rejected particular findings, and concluded that the note and mortgage are valid and enforceable. Because we determine that the district court failed to apply the "clearly erroneous" standard to its review of the bankruptcy court's findings of fact and that the bankruptcy court's factual findings are not clearly erroneous, we reverse.
 
 I.
 
 2
 The following factual summary is compiled from the bankruptcy court's undisputed findings of fact and from the parties' factual stipulation. J. Scott Stuber (Stuber), a real estate salesman, offered to sell the Branding Iron Motel, located in Wichita, Kansas, to Eugene Torline (Torline) and Stephen A. Decker (Decker). Torline was president of Variant Corporation (Variant). Decker was president of Decker Investments Incorporated and Decker and Associates, Inc. Variant and Decker Investments entered into an agreement to make an offer on the motel and to form a corporation to purchase it if the offer was accepted. The owners of the motel accepted the offer, and Branding Iron Motel, Inc. (Branding Iron) was formed in May 1980. Decker became president and Torline secretary-treasurer. Half of the corporate stock was owned by Decker and Associates, Inc., and the remaining half was owned by Variant.
 
 
 3
 Prior to completing the purchase, Decker informed Torline he was having difficulty obtaining his half of the down payment. The real estate agents involved in the transaction, Stuber and Don Dinning, lent Decker $43,500, which was the amount of their real estate commissions. Branding Iron bought the motel on May 30, 1980, and Decker, as president of the corporation, signed the relevant documents.
 
 
 4
 On May 30, 1980, the shareholders entered into an agreement (Agreement Between Shareholders of the Branding Iron Motel, Inc.) which granted each shareholder the authority to borrow up to $60,000 on its interest in the Motel or against its stock. The parties dispute the purpose of the agreement. On June 12, 1980, Stuber and Decker met with representatives of Sandlian Equity, Inc. (Sandlian), a company organized to buy second mortgages, to create a method of paying Decker's debt to Stuber and Dinning. A note in the amount of $57,000 payable to Dinning (Don Dinning Gallery of Homes) was prepared by Sandlian and executed by Branding Iron. Decker signed the note as president and as guarantor. Sandlian also prepared a mortgage on the motel to secure the note. The mortgage was signed by Decker as president of Branding Iron and as guarantor. The note and mortgage are dated June 12, 1980.
 
 
 5
 Also on June 12th, Sandlian prepared an assignment of the note and mortgage. Dinning assigned the note and mortgage that day to Sandlian for $50,000. Stuber and Dinning obtained their real estate commission totaling $43,500 from this amount, and Decker deposited the remaining $6,500 in his personal account.
 
 
 6
 Appellant Branding Iron Motel, Inc. filed a voluntary petition for bankruptcy in May 1981, and initiated an adversary proceeding to determine the validity of the note and second mortgage held by Sandlian. The bankruptcy court in Kansas conducted a trial on March 29 and 30, 1983, and rendered its decision on August 16, 1983. The court ruled in favor of Branding Iron, finding that the note and mortgage transaction was intended to benefit Branding Iron's president and not Branding Iron, that Sandlian acted in concert with Branding Iron's president and had full knowledge of the circumstances of the transaction, and concluding that because Branding Iron's president did not have the authority to mortgage the motel property, the note and mortgage are void and unenforceable.
 
 
 7
 The district court reviewed the bankruptcy court's decision and adopted its findings and conclusions on August 17, 1983, in an order entitled "Certificate of Review." Sandlian attempted to file its notice of appeal in the bankruptcy court on August 25, 1983, but was not permitted to do so because of the district court's August 17th decision. Sandlian then moved the district court to review its August 17th decision. The district court entered a "procedural order" on September 7th, 1983, construing Sandlian's motion as a motion for new trial and motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(a) and (e). The district court conducted an evidentiary hearing on December 12, 1983, considered the evidence de novo, and issued its findings on December 20, 1983, adopting all but four of the bankruptcy court's findings of fact. The court found three of the bankruptcy court's findings "irrelevant without consideration of whether supported by the evidence" and one not supported by the evidence. Record vol. I at 50. Based on these factual findings, it concluded that Branding Iron's president had the ostensible authority to execute the note and second mortgage and that the note and mortgage are valid and enforceable.
 
 II.
 
 8
 The initial issue presented by this appeal is whether a district court may properly conduct a de novo review of a bankruptcy court's findings of fact. Sandlian argues that the district court could conduct a de novo review in this case because it was reviewed pursuant to Fed.R.Civ.P. 59(a) and (e).[1] Rule 59 provides for new trials and the amendment of judgments and has been incorporated into the Bankruptcy Rules through Bankr.R. 9023. Sandlian asserts that the language in Rule 59(a) that "the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions ..." permits the district court to conduct a de novo review after it has ruled on the bankruptcy court's judgment.
 
 
 9
 The district court clearly conducted a review of its own judgment based on rule 59(a) and (e). Record vol. I at 18 (Procedural Order dated September 7, 1983). Rule 59(a) is designed to permit the district court, when functioning as a trial court, to grant new trials and open judgments. See generally 6A J. Moore, J. Lucas and G. Grotheer, Moore's Federal Practice Sec. 59.05 at 59-63 (2d ed. 1985). Final decisions of the bankruptcy court are appealable as of right to the appropriate district court. 28 U.S.C. Sec. 1334(a). The parties may agree to bypass the district court and appeal directly to the court of appeals. 28 U.S.C. Sec. 1293(b). Just as the court of appeals may not conduct an evidentiary hearing for a bankruptcy appeal, so too a district court may not conduct such hearing when it is acting in its capacity as an appellate court. In a bankruptcy appeal, a district court may alter or amend its judgment pursuant to Fed.R.Civ.P. 59(e), but may not conduct a hearing to take additional testimony or other evidence.
 
 
 10
 A bankruptcy appeal is governed, in part, by the bankruptcy rules which were adopted by the Supreme Court pursuant to 28 U.S.C. Sec. 2075 on April 25, 1983, and became effective on August 1, 1983. Because the bankruptcy court in this case entered its findings and conclusions on August 16, 1983, the bankruptcy rules were clearly applicable to the district court's review.[2] Bankruptcy Rule 8013 incorporates the standard of review set forth in Fed.R.Civ.P. 52(a) and provides in relevant part that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Thus, the district court as well as the court of appeals must accept the factual findings of the bankruptcy court unless they are clearly erroneous. In re Reid, 757 F.2d 230, 233 (10th Cir.1985).[3] It is appropriate for the district court to review de novo the bankruptcy court's legal determinations. Richmond Leasing Co. v. Capital Bank, 762 F.2d 1303, 1307 (5th Cir.1985) (per curiam).
 
 
 11
 When reviewing factual findings, an appellate court is not to weigh the evidence or reverse the finding because it would have decided the case differently. Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985). A trial court's findings may not be reversed if its perception of the evidence is logical or reasonable in light of the record. Id. at 1512. We have held in the bankruptcy context that "[t]he bankruptcy court's findings should not be disturbed absent the most cogent reasons appearing in the record." In re Reid, 757 F.2d at 233-34, quoting Kansas Federal Credit Union v. Niemeier, 227 F.2d 287, 291 (10th Cir.1955); In re Pikes Peak Water Co., 779 F.2d 1456, 1458 (10th Cir.1985). Limiting the district court to a review of the bankruptcy court's findings under the clearly erroneous standard is appropriate because a duplication of the bankruptcy court's efforts is unlikely to contribute significantly to the accuracy of fact determinations and is not an efficient use of judicial resources. Additionally, requiring the parties to relitigate the facts before the district court imposes an unreasonable and expensive burden on them.
 
 
 12
 The district court clearly approached this case on a de novo basis. Record vol. II at 3. Nevertheless, its rejection of certain bankruptcy court findings appears to be based on a "clearly erroneous" rationale. It found facts 18, 26 and 30 irrelevant and fact 29 not supported by the evidence. Although a hearing was conducted and testimony introduced, the district court did not find additional facts. We, therefore, turn to a review of the court's rejection of certain facts and its legal conclusions.
 
 III.
 
 13
 In fact 18, the bankruptcy court found that an agreement between the two stockholders of Branding Iron Motel, Inc., permitting Decker Investments to encumber its interest in the motel or its stock up to $60,000, was designed "to enable the parties to raise funds for renovation of the motel." In fact 26, it found that Sandlian knew that Branding Iron never received consideration for the note and mortgage, that Branding Iron's president was the "ultimate beneficiary" of the transaction, and that Sandlian treated the transaction as a debt assumed by the company's president. The bankruptcy court notes in fact 30 that two banks refused to lend money on the motel property because of the second mortgage. In fact 29, it found the note and mortgage transaction a "scheme" whereby Sandlian and Branding Iron's president would benefit at the expense of Branding Iron Motel, Inc.
 
 
 14
 We have reviewed the bankruptcy court record and find plausible support for its factual determinations. The district court rejected facts 18, 26 and 30 because it believed them to be irrelevant and not for lack of support in the record. The primary issue faced by the bankruptcy court was whether Branding Iron's president could legally bind Branding Iron to the note and mortgage under the circumstances of the transaction. Based on principles derived from agency and equity law, the bankruptcy court concluded that Sandlian could not enforce the note and mortgage because it knew that Branding Iron's president was not using company property for the benefit of the company. It found that Branding Iron's president mortgaged the corporation's property to secure a loan to pay the president's personal debt. It also found that Sandlian had complete knowledge of the true purpose of the transaction. While facts 18 and 30 may not be particularly relevant to this issue, fact 26 is critical. Sandlian's knowledge of the circumstances of the transaction and that company property was used for the personal benefit of the company's president is very relevant to the bankruptcy court's ruling.
 
 
 15
 We also disagree with the district court's determination that fact 29 is unsupported by the record. The record supports the bankruptcy court's finding that Sandlian would realize a high percentage return on the transaction, record vol. IV at 202, that Branding Iron's president would satisfy his debt, record vol. IV at 253, and that the real estate brokers would receive their commission from the sale. Record vol. IV at 154, 160 and 354. The record also is clear that Branding Iron would not benefit from the transaction, record Vol. IV at 310-11, and that the parties were aware of this, record Vol. IV at 191-92, 200, 203, 206-08, 239-40 and 349. These findings are also supported by facts 23, 24 and 25, which are uncontested. Record vol. III at 14-16. There is support, therefore, for the bankruptcy court's characterization of the transaction as a "scheme."
 
 
 16
 The bankruptcy court rejected Sandlian's assertion that Branding Iron's president had the ostensible authority to encumber Branding Iron property to secure his personal debt. The district court rejected this legal conclusion by not accepting the bankruptcy court's finding that Sandlian had actual notice that Branding Iron's president was acting on his own behalf and not on behalf of the company. After carefully reviewing the record and Kansas law, we agree with the bankruptcy court that Branding Iron's president was not an ostensible agent when it mortgaged company property to secure his personal debt.
 
 
 17
 We begin by noting that a party asserting a principal-agent relationship bears the burden of establishing its existence by "clear and satisfactory evidence." Rodgers v. Arapahoe Pipeline Co., 185 Kan. 424, 345 P.2d 702, 707 (1959). An agency does not exist merely "because a third person assumed that it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make such an agency seem rational and probable...." Highland Lumber Co. v. Knudson, 219 Kan. 366, 548 P.2d 719, 723 (1976), quoting Shugar v. Antrim, 177 Kan. 70, 276 P.2d 372, 375 (1954). The Kansas Supreme Court has defined an apparent or ostensible agent as "one whom the principal has intentionally or by want of ordinary care induced third persons to believe to be his agent, although no authority has been conferred upon him, either expressly or by implication." Greep v. Bruns, 160 Kan. 48, 159 P.2d 803, 808 (1945). This form of agency is based on a theory of estoppel and requires that an agent reasonably appear to third persons to be authorized to act for the principal. Id. at 809; Brown v. Wichita State University, 217 Kan. 279, 540 P.2d 66, 75 (1975).
 
 
 18
 The record reveals that Sandlian was aware that Branding Iron's president was personally indebted to the real estate brokers. It is also clear that Sandlian was aware that Branding Iron's president was mortgaging Branding Iron property to secure his personal loan. Because Sandlian knew that Branding Iron's president was using company property to secure a personal debt, it should have inquired into the propriety of the transaction and the existence of authority. It was unreasonable for Sandlian to assume that Branding Iron's president had the power to use corporate property for his own personal benefit. El Capitan Land & Cattle Co. v. Boston-Kansas City Cattle Loan Co., 65 Kan. 359, 69 P. 332 (1902). "Apparent authority and its effect vanish ... in the presence of the actual knowledge of the third party as to the real scope of the agent's authority, or when the former has knowledge of facts which would put him upon inquiry as to the actual warrant of the agent." Bank of Oregon v. Hiway Products, 41 Or.App. 223, 598 P.2d 318, 320 (1979), quoting Portland v. American Surety Co., 79 Or. 38, 153 P. 786, 787 (1915).
 
 
 19
 Kan.Stat.Ann. Sec. 17-6304(a)(1)[4] also establishes that this type of transaction between a corporation and one of its officers is void or voidable unless authorized in good faith by a majority of the knowledgeable, disinterested directors of the corporation. Oberhelman v. Barnes Inv. Co., 236 Kan. 335, 690 P.2d 1343, 1349 (1984). Sandlian is charged with constructive notice of this statutory requirement. Service Oil Co. v. White, 218 Kan. 87, 542 P.2d 652, 661 (1975). Thus, in order for Sandlian to believe reasonably that Branding Iron's president possessed the requisite authority, it must have been induced or permitted to believe that the transaction had the approval or was otherwise sanctioned by the board of directors. The record fails to reveal any such representation. To the contrary, Sandlian dealt solely with Branding Iron's president and never discussed the transaction with any other officer, director, or shareholder of Branding Iron. Record vol. IV at 192. Branding Iron's only other shareholder, Mr. Torline, did not become aware of the mortgage until late spring 1981, immediately prior to filing for bankruptcy. Record vol. II at 17 (fact 27). We, therefore, agree with the bankruptcy court's conclusion that Branding Iron's president was not an apparent agent when he mortgaged the Branding Iron Motel to secure his personal note.
 
 
 20
 REVERSED and REMANDED with the direction that the district court enter judgment affirming the bankruptcy court.
 
 
 
 [1]
 Rule 59(a) and (e) are as follows:
 (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.
 (e) Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.
 
 
 [2]
 Absent manifest injustice or intent to the contrary, the court generally applies the law as it exists when a decision is made. See Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974)
 
 
 [3]
 Proceedings that fall within the "core area" of bankruptcy power clearly come within the reach of Rule 8013. There is some question as to the constitutionality of such review when the proceeding does not involve a core area. 1616 Reminc Ltd. Partnership v. Atchison & Keller Co., 704 F.2d 1313, 1813 (4th Cir.1983). Thus, the rule may not be applicable when the matter involves a traditional state common-law action "related only peripherally to an adjudication of bankruptcy under federal law." Harman v. Levin, 772 F.2d 1150, 1153 (4th Cir.1985). In this case, the controversy involving the note and mortgage is inextricably tied to the bankruptcy proceeding because it affects the liquidation of assets, and comes within the ambit of "core proceedings" as defined in 28 U.S.C. Sec. 157(b)(2)
 
 
 [4]
 This statute contains the following language:
 Financial interest of officer or director in corporate transaction; effect; quorum.
 (a) No contract or transaction between a corporation and one or more of its directors or officers, or between a corporation and any other corporation, partnership, association or other organization in which one or more of its directors or officers are directors or officers, or have a financial interest, shall be void or voidable solely for this reason, or solely because the director or officer is present at or participates in the meeting of the board or committee thereof which authorizes the contract or transaction, or solely because his or their votes are counted for such purpose, if:
 (1) The material facts as to his relationship or interest and as to the contact or transaction are disclosed or are known to the board of directors or the committee, and the board or committee in good faith authorized the contract or transaction by the affirmative votes of a majority of the disinterested directors, even though the disinterested directors be less than a quorum; ...