**In re E–4 EXCAVATING, INC.,
Plaintiff/Appellee,**

v.

**LAWRENCE NATIONAL BANK &
TRUST CO., Defendant/Appellant.**

No. 87–4190.

United States District Court,
D. Kansas.

May 23, 1989.

**270**

Gary Hanson, Stumbo, Stumbo, Hanson & Hendricks, Topeka, Kan., Eugene F. De-Shazo, Kansas City, Mo., for plaintiff/appellee.

Donald E. Bucher, Scott B. Haines, Gould & Moore, P.A., Kansas City, Mo., for defendant/appellant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an appeal from an order of the bankruptcy court. The bankruptcy court found that appellant Lawrence National Bank and Trust Company (LNB) had terminated its security interest in certain excavating equipment by expressly authorizing E-4 Farms, a partnership, to transfer this equipment to E-4 Excavating, Inc., a Kansas corporation. LNB contends that the bankruptcy court erred in reaching this conclusion because the evidence showed that LNB *did not expressly authorize* the transfer of the equipment, but *merely acquiesced* in the transfer of the equipment. The court has carefully reviewed the briefs of the parties and is now pepared to rule.

The standards of review are well-settled. The bankruptcy court's findings of fact must be upheld unless they are clearly erroneous. Bankr.R. 8013; *In re Reid,* 757 F.2d 230, 233 (10th Cir.1985). The bankruptcy court's legal determinations are reviewed de novo. *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399–400 (10th Cir.1986).

In 1978, Benny Edmonds and his son formed a partnership named E-4 Farms. The partnership entered into loan agreements with LNB. The partnership was engaged in farming operations and also operated an excavating business. Loan funds received from LNB were used to finance both the farming and excavating operations. The Edmonds granted a security interest to LNB in the partnership's machinery and equipment to secure repayment of the loans. The security agreement contained the following provision:

> *Sale, Exchange, Lease or Disposal.* Without the prior *written consent* of the lender, consumers will not sell, exchange, lease or otherwise dispose of the collateral or any of the consumer's right therein or under this agreement.

In May, 1981, E-4 Excavating, Inc., a Kansas corporation, was formed. Upon incorporation, certain excavating equipment was transferred from the partnership to the new corporation.

On August 30, 1985, E-4 Excavating, Inc. filed a Chapter 11 bankruptcy petition. An adversary proceeding was thereafter commenced to determine the validity of the alleged security interest of LNB in the excavating equipment previously owned by E-4 Farms. A trial was held, and the bankruptcy court determined that LNB terminated its security interest in the excavating equipment by expressly authorizing E-4 Farms to transfer the equipment to E-4 Excavating, Inc.

The issue here is whether LNB expressly authorized the transfer of equipment from E-4 Farms to E-4 Excavating, Inc. The appellant argues that LNB merely acquiesced in the decision to transfer, while the appellee asserts that LNB expressly authorized the transfer of the equipment.

The parties recognize that this case is controlled by *North Central Kansas Production Credit Ass'n v. Washington Sales Co., Inc.,* 223 Kan. 689, 577 P.2d 35 (1978).[1] In *Washington Sales,* the Kansas Supreme Court interpreted K.S.A. 84–9–306(2), which governs a secured party's rights on disposition of collateral. The facts of *Washington Sales* disclose that the North Central Kansas Production Credit Associa-

---

1. The appellant has cited several cases from other jurisdictions in its briefs. These cases have no application here since we must apply Kansas law.

tion (PCA) loaned the debtor over $100,000 for his dairy operation. The debtor in turn executed a promissory note, a security agreement and a financing statement. The security agreement prohibited the debtor from disposing of the collateral without PCA's written consent, but went on to grant the debtor permission to sell the property for fair market value provided that all payments be made jointly to the debtor and the PCA.

Over a period of time, however, it was learned by the PCA that on approximately ten separate occasions, the debtor had sold a total of 35 head of cattle through the Washington Sales Company without remitting the proceeds. An action was then instituted by PCA against Washington Sales Company for conversion, and the issue presented to the trial court was "whether the plaintiff waived its security interest in the cattle by consenting to the sale by the provision of its security interest." *Id.*, 577 P.2d at 37. The trial court directed a verdict for the plaintiff, finding PCA did not by its conditional consent waive its security interest because the debtor's sale was in violation of those conditions and was unauthorized.

Upon appeal, the Kansas Supreme Court agreed with the trial court's ruling that the PCA did not, by the terms of its security agreement, or by its conduct in accepting payments from the debtor, expressly or impliedly waive its security interest in the collateral. *Id.*, 577 P.2d at 41. However, the Court reversed the trial court by holding that the PCA did, through its officers, expressly consent to the sale of the collateral by the debtor. *Id.* The Court found that an express authorization by the secured party of the debtor to sell collateral constitutes an express waiver of the security interest in the collateral sold. *Id.*

The decision in *Washington Sales* was later reaffirmed by the Kansas Supreme Court in *Peoples National Bank and Trust v. Excel Corp.*, 236 Kan. 687, 695 P.2d 444 (1985). *Also see First National Bank v. Atchison County Auction Co.*, 10 Kan.App.2d 382, 699 P.2d 1032 (1985); *North Central Kansas Production Credit*

*Ass'n v. Boese*, 2 Kan.App.2d 231, 577 P.2d 824 (1978), *aff'd in unpub. op.*, 225 Kan. clxix, 588 P.2d 491 (1978).

The court has carefully reviewed the pertinent testimony on the issue of whether LNB expressly authorized the transfer of the excavating equipment to E-4 Excavating, Inc. The testimony of Fred DeLano, Vice-President of LNB, and Terry Sutcliffe, President of LNB, sufficiently indicates that LNB gave its express authorization for the transfer. Thus, we must conclude that the factual findings of the bankruptcy court are not clearly erroneous. Accordingly, the judgment of the bankruptcy court is hereby affirmed.

IT IS SO ORDERED.