ORFINGER, Judge.
The plaintiff appeals from a final order dismissing its claim against defendant Harvey Seybold, Jr., at the close of plaintiff’s case. We find error and reverse.
Champion Home Builders Co. (Champion) manufactures mobile homes. Highridge Sales, Inc. was a mobile home dealer, and on July 28, 1981 it entered into a dealer’s agreement with Champion by which, among other things, it agreed to pay for two mobile homes it was purchasing at that time within 180 days of the date of the agreement, or within ten days from the sale of either unit, whichever first occurred. Seybold was an officer and director of Highridge, and to secure the sale and extension of credit to Highridge, Sey-bold and other corporate officials executed a continuing guaranty agreement, wherein they guaranteed to Champion full and prompt payment of any sums now or hereafter due from Highridge to Champion. The guaranty agreement also provided:
[T]he undersigned hereby waives all notices hereunder, demand, presentation, any and all notices of protest, default, or non-payment and consents to any and all extensions or renewals made for on account of any loan, note, bills or other indebtedness due from the customer to the Seller without releasing or discharging the undersigned in any way hereunder.
On November 2, 1981, Seybold wrote to Champion, stating that he had resigned as an officer and director of Highridge, and that:
From November 5, 1981 forward or upon your receipt of this letter, whichever occurs first, I shall not be responsible for any debts or obligations incurred by Hi-ghridge Sales, Inc., its officers, employees, servants or agents.
*837 Champion received the letter. In June,. 1982 Champion advised Highridge by letter that the terms of the dealer agreement “remain in effect until further notice covering the remaining double-wide mobile home in your firm’s possession ...” The parties treat this letter as an agreement by Champion to extend the time for payment on the mobile home unit, one of the two units included in and covered by the July 28, 1981 Dealer’s Agreement. Highridge ultimately sold this unit in December 1982, but did not pay Champion, and this suit against Highridge and the guarantors followed.
Seybold contended at trial, as he does here, that the extension of time for payment granted by Champion was an alteration of the original obligation, and since it occurred after he had unilaterally withdrawn his guaranty, he is discharged from liability. He relies on the rule of law to the effect that a guarantor is released if, without his consent, the obligation by which the principal debtor is bound to the creditor is materially altered. See 28 Fla.Jur.2d, Guaranty and Suretyship, p. 259. His argument lacks merit. First, the letter of revocation refers to debts incurred after November 5, 1981. The debt in question was incurred prior to that date. Next, he argues that the extension of time for payment was without his consent, but he overlooks the fact that he gave consent to any and all extensions in the written guaranty instrument he signed.
A guarantor is bound by an agreement in the guaranty contract which permits extensions of time for performance of the principal contract, and when the guaranty agreement expressly authorizes such extensions, an extension of time within the contemplation of the agreement does not discharge the guarantor. Chris Craft Industries, Inc. v. Van Valkenberg, 267 So.2d 642 (Fla.1972); Morton v. Mercantile National Bank of Miami Beach, 185 So.2d 172 (Fla. 3d DCA 1966); Bleakley v. Sarasota Bank & Trust Company, 194 So.2d 918 (Fla. 2d DCA 1967). See also 38 Am.Jur.2d, Guaranty § 94.
Appellee’s reliance on Miami National Bank v. First International Realty Investment Corp., 364 So.2d 873 (Fla. 3d DCA 1978) is misplaced. In that case, the guarantor guaranteed payment of a 90 day note. The note could be renewed each 90 days if the bank was satisfied with the financial stability of the borrower and the guarantor. A new note would be executed at time of renewal. After the first renewal but before the second, appellee Porch notified the bank that he was revoking his guaranty on the note. Thereafter, the bank removed his name from the list of guarantors, and later accepted two additional renewal notes. In upholding a summary judgment in favor of Porch when the unpaid notes were sued upon, the court noted that the bank had removed Porch’s name as a guarantor after his notice of revocation. The case before us is distinguishable. In Miami National Bank a new obligation was created with each renewal note, and the bank recognized Porch’s revocation by removing his name from the list of guarantors. Here, no new obligation was created when Champion extended the time for payment of the original obligation (to which Seybold had consented in the guaranty agreement) and Champion took no action to indicate that it did not look to Seybold for performance of his guaranty.
The judgment is reversed and the cause is remanded for further proceedings consistent herewith.
REVERSED and REMANDED.
COBB, C.J., and COWART, J., concur.