In the Matter of Rudolph
A. McLEOD, Debtor.

Rudolph A. McLEOD

v.

WESTERVILLE BROADCASTING OF
FLORIDA, INC., Paul C. Major, G.
Rand Smith, George E. Coles and Robert W. Harrison.

Civ. A. No. 92–3080.
Bankruptcy No. 90–12174–K.
Adv. No. 91–1128–K.

United States District Court,
E.D. Louisiana.

Aug. 12, 1993.

Douglas Scott Draper, Deborah Weisler Hayes, Pamela Ann Van Geffen, Friend, Wilson, Draper, Hubbard & Bowling, New Orleans, LA, for Rudolph A. McLeod.

Westerville Broadcasting of Florida, Inc., pro se.

Paul C. Major, pro se.

Mark Christopher Landry, Newman, Mathis, Brady, Wakefield & Spedale, Metairie, LA, for G. Rand Smith.

George E. Coles, pro se.

Robert W. Harrison, pro se.

## OPINION

WICKER, District Judge.

This is an appeal of a bankruptcy adversary proceeding, in which the Bankruptcy Court ruled in favor of the debtor in his suit to collect on a promissory note. After considering the record, the evidence, the law, and the briefs and arguments of counsel, the decision of the Bankruptcy Court is AFFIRMED.

Rudolph McLeod was the owner of Gulf South Communications, Ltd. He sued on a promissory note executed by Westerville Broadcasting of Florida, Inc., and on a continuing guaranty of the note signed by Paul C. Major, G. Rand Smith, George E. Coles, and Robert W. Harrison. Westerville had issued the note to Gulf South on April 20, 1983, in partial payment for Westerville's purchase of WTMP, a Florida radio station. The guarantors of the note were officers and shareholders of Westerville.

The guarantors subsequently learned that several liens had been placed against the radio station's assets by creditors of Gulf South, although Gulf South had warranted in the bill of sale that the seller was the lawful owner of the assets and that the property was free from all encumbrances.

In September 1983 defendants Smith and Coles informed McLeod by telephone that they were revoking their guaranties because they had been misled, and that they intended to sue him to void the deal. They never revoked their guaranties in writing, however, nor did they take court action.

On November 17, 1983, an agreement was executed by Gulf South's creditors, by McLeod, and by Westerville (through Major and Harrison) to eliminate the liens on the radio station's assets. The agreement released McLeod from any claims arising out of the sale, particularly as to misrepresentations and breach of warranty, and provided that Westerville's payments on the note would be made to Sun Bank, which would allocate the payments among Gulf South's creditors.

Subsequently Gulf South assigned its assets, including the note, security agreement, etc., to McLeod.[1] In 1986 Westerville filed for Chapter 11 relief in Florida.

In June 1990 McLeod, who is a Louisiana resident, filed his own Chapter 11 proceedings in Louisiana and on March 2, 1991 he filed this adversary proceeding to collect on the Westerville note. Following trial on the merits the bankruptcy judge found Westerville, Major, Smith, Coles and Harrison jointly and solidarily liable to McLeod in the amount of $870,822.98, with 10% interest until paid.

Defendant G. Rand Smith brings this appeal.[2] He raises six assignments of error regarding the Bankruptcy Court's ruling.

First, the record does not reflect that the bankruptcy judge made a determination of whether this matter is a core proceeding. Smith contends that the Bankruptcy Court lacked jurisdiction to enter final judgment because this proceeding is a non-core matter.

The distinction is significant because the classification as core or noncore determines the type of review this Court must accord the ruling of the bankruptcy court. In a core proceeding, the district court may not set aside the bankruptcy court's findings of fact unless they are clearly erroneous. Bankruptcy Rule 8013. In a noncore proceeding, however, the bankruptcy court makes proposed findings of fact, which are subject to *de novo* review by the district court. 28 U.S.C. § 157(c)(1).

In both core and noncore cases, however, the district court applies *de novo* review to the bankruptcy court's conclusions of law. *See In re Branding Iron Motel, Inc.,* 798 F.2d 396 (10th Cir.1986).

Title 28 U.S.C. § 1334 grants district courts "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a)-(b). Title 28 U.S.C. § 157(b)(1) permits bankruptcy judges to hear and determine all *core proceedings* arising under title 11 or arising in a case under title 11, where such matters have been referred by the district court, and to enter appropriate orders and judgments, subject to review by the district court.[3]

---

**1.** One of the issues now on appeal is whether McLeod presented sufficient proof of the transfer of the note.

**2.** Defendants Smith and Coles appealed. In November 1992 this Court dismissed their appeals for failure to comply with the Bankruptcy Rules, but Smith's appeal was reinstated upon his motion and supplement correcting the omissions in his original brief. Thus, only Smith's appeal is now before the Court.

**3.** The Eastern District of Louisiana has a standing order, dated March 30, 1990, that "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 filed in or transferred or removed to this district be ... referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law."

■ Classification of a matter as a related proceeding or as a core proceeding has no relationship whatever to the jurisdiction of the Court, but merely relates to a determination of whether the bankruptcy judge issues a final order or whether the bankruptcy judge issues findings of fact and conclusions of law upon which the district court enters a final order after appropriate proceedings. *In re Aaronics Equipment Rentals and Sales, Inc.*, 56 B.R. 297 (W.D.La.1985).

■ The bankruptcy judge must determine, on his own or a party's timely motion, whether a proceeding is a core proceeding; however, that determination is not to be made "solely on the basis that its resolution is affected by State law." 28 U.S.C. § 157(b)(3). *See Northern Pipeline Const. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

In a non-core proceeding that is *otherwise related* to a case under title 11, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court; the district court then shall enter any final order or judgment after considering the bankruptcy judge's findings and conclusions and after reviewing de novo "those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

Section 157(b)(2) provides a non-exclusive listing of core proceedings. Of particular note in this case is subparagraph (O), "other proceedings affecting liquidation of the assets of the estate or the adjustment of the debtor-creditor or equity security hold-er relationship, except personal injury tort or wrongful death claims."[4]

Although the Fifth Circuit has stated that a proceeding is not a core proceeding if it does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of bankruptcy,[5] in the recent case of *Matter of Baudoin*, 981 F.2d 736 (5th Cir.1993), the Fifth Circuit found that a lender liability action by Chapter 7 debtors against a bank that allegedly forced them into bankruptcy was a core proceeding under 28 U.S.C. § 157(b)(2)(O):

> While we recognize that § 157(b)(2)(O) is to be narrowly construed, we are confident that the Baudoins' claim is precisely the type which fits within the catchall provision's narrow ambit. It would "affect[ ] the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship" tremendously. *See In re Branding Iron Motel*, 798 F.2d 396, 399 n. 3 (10th Cir.1986) (noting that a controversy over a note and mortgage is "inextricably tied to the bankruptcy proceeding because it affects the liquidation of assets" and is, therefore, core).

981 F.2d at 742.

■ Therefore, this Court concludes that the promissory note is an asset of the bankruptcy estate. These proceedings affect the liquidation of that asset, resulting in the addition of some $800,000 to the funds available for distribution by the bankruptcy court. The matter is "inextricably tied" to the bankruptcy proceeding. Accordingly, this action to collect on the promissory note is a core proceeding and the bankruptcy court had authority to issue a final ruling.

4. The statute states that core proceedings "include, but are not limited to" the listed matters. Besides (O), the following are set out: (A) matters concerning administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from the property of the estate, but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims; (C) counterclaims by the estate against persons filing claims against the estate; (D) orders in respect to obtaining credit; (E) orders to turn over property of the estate; (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul, or modify the auto-matic stay; (H) proceedings to determine, avoid, or recover fraudulent conveyances; (I) determinations as to the dischargeability of particular debts; (J) objections to discharges; (K) determinations of the validity, extent, or priority of liens; (L) confirmations of plans; (M) orders approving the use or lease of property, including the use of cash collateral; and (N) orders approving the sale of property.

5. *In re Wood*, 825 F.2d 90 (5th Cir.1987); *see also, Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183 (5th Cir.1990).

Although the record on appeal does not disclose that the bankruptcy judge expressly ruled on the core/noncore status of the proceedings, given this Court's determination that the matter is a core proceeding, a remand for such a determination is unnecessary and would hinder the cause of judicial economy. Therefore, the Court will review the Bankruptcy Court's ruling as a final order and the appropriate standard of review is that of Bankruptcy Rule 8013, which provides that this Court may not set aside the bankruptcy court's findings of fact unless they are clearly erroneous.

■ A district court conducting a "clearly erroneous" review of a bankruptcy court's fact-findings must review the record in its entirety to determine whether it is left with a firm conviction that mistake has been committed; however, the district court is not free to weigh evidence as it would on a *de novo* review. *Matter of Webb*, 954 F.2d 1102 (5th Cir.1992.)

McLeod failed to introduce the original promissory note into evidence. At trial, he identified a copy of the promissory note and the signatures thereon, which his counsel thereafter introduced into evidence together with copies of several other documents. The bankruptcy judge specifically commented, "Hearing no objection, let them be admitted." (Tr. 9.)

Smith now asserts that McLeod's failure to introduce the original note into evidence precludes recovery.

A promissory note, mature and regular on its face, is admissible into evidence without extrinsic proof of its execution or authenticity and, as evidence, is sufficient to establish a prima facie case. All attacks upon it, or the debt it represents, must be made by way of affirmative defenses as to which the burden of proof is on the defense.

*Haycook v. Ostman*, 397 So.2d 743, 744 (Fla. 5th D.C.A.1981).[6]

■ Ordinarily a party seeking to recover on an instrument must produce it.

F.S.A. § 673.307(2). In *Ferris v. Nichols*, 245 So.2d 660, 661 (Fla. 4th D.C.A.1971), the court denied summary judgment because the plaintiff relied on his own affidavit instead of producing the original note:

Except in the unusual case where the suit is on a lost or destroyed note, the instrument sued on should be produced in order to entitle the holder to recovery. F.S.1967, section 673.3-307(2), F.S.A., provides: "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." (Emphasis added.)

■ Where a copy of a note has been introduced in place of the original, unless the issue is raised in the trial court it cannot be raised on appeal. *Telephone Utility Terminal Company, Inc. v. EMC Industries, Inc.*, 404 So.2d 183 (Fla. 5th D.C.A.1981); *Coquina Ridge Properties v. East West Company*, 255 So.2d 279 (Fla. 4th D.C.A.1971). Since neither Smith nor the other defendants objected at trial to the admission of a photocopy of the note or contested the terms of the note as stated thereon, they waived the right to require production of the original note.

In addition, Smith contends McLeod failed to prove he was the successor-in-interest under the promissory note and guarantees from Gulf South Communications, Ltd., because neither the original of the note nor any written assignment to McLeod were introduced into evidence.

McLeod simply testified that he is the owner of Gulf South and that Gulf South assigned the note to him. (Tr. 84.) He offered no evidence of written assignment or indorsement, nor did the defendants request any such evidence. The Bankruptcy Court found the evidence of transfer was sufficient because the defendants failed to present any evidence disputing McLeod's testimony regarding the assignment and, further, the defendants had acknowledged

6. The parties agree that Florida law is applicable to this case because that state was the situs of the contract.

the debt to McLeod and had ·made numerous payments on the debt to him.

Transfer of an instrument vests in the transferee such rights as the transferor has therein. F.S.A. § 673.201(1). Negotiation is the transfer of an instrument in such form that the transferee becomes a holder: if the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery. F.S.A. § 673.202(1).

 Although endorsement of order paper normally is a prerequisite to transfer by negotiation, *Parker v. Dudley*, 527 So.2d 240, 242 (Fla. 5th D.C.A.1988), it is also possible to transfer a note by assignment. *Margiewicz v. Terco Properties of Miami Beach, Inc.*, 441 So.2d 1124 (Fla. 3rd D.C.A.1983).

At trial the defendants did not challenge McLeod's statement that Gulf South had assigned the note to him. There was no evidence that any of the defendants had ever contested McLeod's right to receive payments on the note. Further, payments were made to McLeod after the transfer. Accordingly, there is no clear error in the Bankruptcy Court's finding that the note had been assigned to MacLeod.

 Next, Smith contends the bankruptcy judge erred in finding that the release agreement was valid. He argues that McLeod had no right to restructure the terms of the note without the express permission of all the guarantors, so that the guaranty for the April 1983 debt became null upon refinancing of the debt in November 1983.

The Bankruptcy Court concluded that Smith and Coles were estopped from asserting that they were not parties to the Release Agreement, because Smith and Coles were stockholders of Westerville and were bound by the corporation's actions; both Smith and Coles knew of the negotiation of the Release Agreement and consented to the terms set forth in it; and the continuing guaranty, which was signed by all the defendants, contains broad language permitting extension or renewals of the note and allowing the payment to be extended, renewed or compromised. In addition, Smith admitted at trial that he was involved in the preparation of an attachment to the release agreement. The court concluded there was no material alteration because the Release Agreement did not change the amount owed on the note, but merely provided a method for paying the claims from amounts due on the note.

Specifically, the Guaranty provides that:

The undersigned [guarantors] ... hereby unconditionally and absolutely guarantee the prompt and punctual payment ... of the foregoing Note ... and all extentions· [sic] or renewals thereof ...; and (b) hereby consent and agree (i) that all or any of the collateral for the foregoing Note may be exchanged, released, surrendered or sold from time to time; (ii) that payment of the foregoing Note, or any of the liabilities of the maker thereof, may be extended or the Note renewed any number of times and for any period ...; (iii) that the holder of the Note may grant any releases, compromises or indulgences with respect to the Note or any extensions or renewals thereof or any security therefore or to any party liable thereunder or hereunder; and (iv) that if the holder waives any of the provisions of this Note, at any given time, with or without notice to or consent of the sureties, the liabilities of the sureties ... shall not be affected thereby. * * *

 "[I]f the creditor and principal modify their contract, and the surety consents thereto, he will not be discharged. Such consent need not be expressly given, but may be implied from the surrounding circumstances or from his conduct." *Vanguard Construction Company, Inc. v. Lewis State Bank*, 348 So.2d 72 (Fla. 1st D.C.A.1977).

 Where a continuing guaranty expressly provides that the time of payment of the underlying debt may be altered or other guarantors released from time to time without notice, the guarantors thereunder have consented to such alterations of their guaranty and have waived any right

to a discharge because of them. *U.S. Home Acceptance Corp. v. Kelly Park Hills, Inc.*, 542 So.2d 463 (Fla. 5th D.C.A. 1989).

Considering the provisions of the Guaranty in this case, there was no error in the Bankruptcy Court's finding that Smith agreed in advance to the restructuring of the debt. Further, considering the unrefuted evidence that Smith was aware of the restructuring of the note and, in fact, cooperated with the other Westerfield principals during the negotiations, the Bankruptcy Court did not err in finding that the release and restructuring arrangements were done with the knowledge and consent of the guarantors.

Smith next asserts the bankruptcy judge erred in finding that he had not properly revoked his guaranty prior to the refinancing of the debt. Smith contends that McLeod orally released him from the guarantees in a telephone conversation.

The bankruptcy judge pointed out that McLeod denied that the conversation ever took place. Further, there was no evidence that any of the guarantors ever sent a written revocation of the guaranties to McLeod, that McLeod ever acknowledged any revocation of the guaranties, or that any of the guarantors actually brought suit against McLeod to rescind the sale or their guaranties. There was no evidence of any binding agreement supporting the release of the guaranties or of any consideration for such a release.

■ A continuing guaranty remains in effect until revoked. *Causeway Lumber Co., Inc. v. King*, 502 So.2d 80 (Fla. 4th D.C.A.1987). A surety may be released from his obligation through a binding agreement with the creditor that is supported by adequate consideration. 74 Am. Jur.2nd, Suretyship, § 82 at 62.

■ Further, even where a guaranty is revoked, the guarantor remains liable for debt incurred prior to the date of the official notification of revocation. *See Champion Home Builders, Inc. v. Highridge Sales, Inc.*, 472 So.2d 836 (Fla. 5th D.C.A. 1985).

Accordingly, there is no clear error in the Bankruptcy Court's conclusion that Smith and Coles failed to prove there was any binding agreement supporting release of their guaranties.

■ Smith asserts further that the bankruptcy judge erred in refusing to find there was fraud in the inducement due to a material misrepresentation. He contends there was a failure of consideration for the guaranty because McLeod fraudulently induced defendants to sign the guaranty by stating that the transfer of property would be clear of all liens and encumbrances, but the defendants later discovered that there was substantial unpaid debts and liens were placed against the radio station's assets.

On this issue the Bankruptcy Court found that none of the defendants was injured by the alleged misrepresentations, since McLeod ultimately paid to have all debts extinguished. There was no evidence to support defendants' allegation that the existence of the unpaid obligations caused them to incur additional expense; instead, the evidence showed that the obligations were paid by McLeod's money and that the transaction did not cause any increase in the purchase price.

In addition, the court concluded that the defendants had not proven that the "liens" actually encumbered the assets transferred to Westerville, because they failed to demonstrate that any judgment was recorded or any execution was made against WTMP's assets.

■ Under Florida law, a judgment becomes a lien on non-exempt real property of the debtor when a certified copy of the judgment is recorded in the official records of the county where the debtor owns real property. *Steinbrecher v. Cannon*, 501 So.2d 659 (Fla. 1st D.C.A.1987). Recording of the judgment does not create a lien as to personal property, however; a lien does not attach to personal property until a writ of execution has been delivered to the sheriff in the county in which the personal property is located. *Id.*

There is no proof that at the time the Guaranty in this case was signed any writs of execution had been delivered regarding the personal property included in the sale of the radio station. Accordingly, there is no clear error in the bankruptcy court's ruling on this issue.

Finally, Smith contends the bankruptcy judge erred in calculating the amount due under the note. He contends that the payments made on the note should have reduced the principal to either $196,011.84 or $299,000 and he contests McLeod's method of allocating the payments among the various items of debt owed.

The bankruptcy judge found that McLeod had sustained his burden of proving the amount owed on the note by its principal, Westerville, because McLeod had calculated the balance due using Westerville's own figures from Internal Revenue Service 1099 forms sent to McLeod by Westerville. The judge noted there was a subtraction error in McLeod's figures, which the court corrected. The judge pointed out, as mentioned above, that the restructuring of the debt did not change the overall amount owed between the parties, but rather simply allocated the payments to various aspects of the sums due.

Under the language of the Guaranty, as discussed above, the guarantors effectively agreed to the restructuring of the debt. The language did not give the guarantors the right to dictate to Westerville how the payments under the note were to be allocated. Under the Guaranty the guarantors are bound by the creditor's and the corporation's decisions as to repayment of the note.

Accordingly, the bankruptcy court did not err in its calculation on the amounts of principal and interest due.

For the foregoing reasons, the Bankruptcy Court's Memorandum Opinion and Order dated July 15, 1992, is **AFFIRMED.** Costs of this appeal are assessed against G. Rand Smith.