**In re SUNRISE ISLAND, LTD., Debtor.**

**SUNRISE ISLAND, LTD., Plaintiff,**

**v.**

**GOLDMAN SACHS & COMPANY, for the Benefit of Claude M. BALLARD, IRA Account No. 005990189, Defendant.**

**In re LIMITED GAMING OF AMERICA, INC., Debtor.**

**LIMITED GAMING OF AMERICA, INC., Plaintiff,**

**v.**

**GOLDMAN SACHS & COMPANY, for the Benefit of Claude M. BALLARD, IRA Account No. 005990189, Defendant.**

**Bankruptcy Nos. 96–00396–C, 96–00395–C. Adv. Nos. 96–0088–C, 96–0156–C.**

United States Bankruptcy Court, N.D. Oklahoma.

Dec. 5, 1996.

Dana L. Rasure, Tulsa, OK, for Plaintiffs.

Patrick O'Connor, Tulsa, OK, for Defendant.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

This matter came on to be heard on this 13th day of November, 1996 upon cross-motions for summary judgment filed herein by Plaintiffs, Sunrise Island, Ltd. (hereinafter "Sunrise") and Limited Gaming of America, Inc. (hereinafter "Gaming"), and Defendant, Goldman Sachs & Company for the benefit of Claude M. Ballard IRA Account No. 005990189 (hereinafter "Ballard"). Both Sunrise and Gaming are debtors in Chapter 11 proceedings before this Court. The Court, having reviewed the briefs filed herein, having heard arguments of counsel, and now being fully advised in the premises, hereby finds as follows:

## FINDINGS OF FACT

In May 1995, Carolyn Lobato Bleidt (hereinafter "Lobato–Bleidt") was the managing partner of Sunrise. Sunrise, a general partnership formed under the laws of the State of Florida, is the owner of Sunrise Island. Gaming, another entity involved in this litigation, is a Colorado corporation which has been domesticated in Florida. Lobato–Bleidt was the de facto president and majority shareholder of Gaming. Gaming held a note receivable secured by a first Deed of Trust lien against Sunrise Island in the amount of $1,522,500.00. Gaming and Sunrise and their directors, shareholders, and partners have been involved in extensive litigation. Significantly, all of the directors of Gaming are partners in Sunrise.

In late May 1995, Lobato–Bleidt, as managing partner of Sunrise, commenced negotiations with Ballard. The subject of the negotiations was Ballard's proposed loan of $500,000.00 to Sunrise to be secured by a first Deed of Trust lien on Sunrise Island (the "Loan Transaction"). Ballard had not had previous business dealings with Sunrise, Gaming, or Lobato–Bleidt. In connection with the Loan Transaction, Lobato–Bleidt supplied Ballard with certain financial information on Sunrise, Gaming, and on herself.

Ballard was a sophisticated businessman with extensive experience in commercial real estate lending transactions. The financial information supplied to Ballard revealed that Lobato–Bleidt was a principal in both Sunrise and Gaming. This financial information also revealed that Sunrise's note to Gaming, which was secured by a first Deed of Trust lien on Sunrise Island, was in default. Lobato–Bleidt also provided Ballard with the name of her attorney, Scott Rost ("Rost"). Rost represented Lobato–Bleidt in court proceedings in Florida wherein a receiver was

appointed to administer the assets of Gaming.[1]

Lobato–Bleidt provided Ballard with a Secretary's Certificate dated June 9, 1995 referencing a May 4, 1995 telephonic resolution of the Gaming Board of Directors. The May 4, 1995 resolution purports to allow the subordination of Gaming's lien against Sunrise Island to another lender for consideration. There is no written resolution reflecting a May 4, 1995 meeting of the Gaming Board of Directors. Ballard did not inquire into the validity of the Board of Directors meeting referenced in the Secretary's Certificate. On June 9, 1995, Lobato–Bleidt executed a Subordination Agreement as President of Gaming, which subordinated Gaming's lien against Sunrise Island to Ballard's lien against the property.

All of the directors of Gaming, including Lobato–Bleidt, had a conflict of interest with respect to the Subordination Agreement transaction in that they were also partners in Sunrise. The Subordination Agreement was not authorized by Gaming's shareholders. The Subordination Agreement was not authorized by the receiver appointed over Gaming's assets by the Florida Court. In addition, the transaction was not a fair and reasonable transaction with respect to Gaming.

On June 15, 1995, the Loan Transaction between Ballard and Sunrise was closed. Lobato–Bleidt, as Managing Partner of Sunrise, executed a Note and Deed of Trust in favor of Wayne LaRue, Trustee for Ballard. Lobato–Bleidt also co-signed the Note individually.

At the time of the closing, Ballard knew or should have known that the Subordination Agreement from Gaming was a conflict of interest transaction. Ballard did not investigate or inquire into the validity of the Subordination Agreement from Gaming. In making the loan, Ballard testified that he did not rely on the legitimacy of the Secretary's Certificate or the Subordination Agreement. Ballard testified that he relied on a Title

Insurance Policy which he purchased to insure the priority of his Deed of Trust lien.

The net loan proceeds received by Sunrise from Ballard on June 15, 1996 were $472,589.56. On June 16, 1995 and June 21, 1995, Sunrise deposited $296,286.66 of these loan proceeds into Gaming's Daytona Beach Bank Account. During the period June 16, 1995 through July 7, 1995, $279,528.77 of these funds were disbursed by Gaming to Lobato–Bleidt, to her attorney, Rost, and to another entity controlled by Lobato–Bleidt, Oak Place Development Company. Lobato–Bleidt used Gaming as a conduit to transfer these funds for her benefit. On July 12, 1995, the remaining funds in Gaming's Daytona Beach bank account in the amount of $11,189.81 were disbursed to the receiver appointed for Gaming.

### CONCLUSIONS OF LAW

The issue before the Court is whether Ballard's lien against Sunrise Island should be subordinated to Gaming's lien against Sunrise Island. In the alternative, the issue is whether the Subordination Agreement executed by Lobato–Bleidt is valid. The Subordination Agreement at issue subordinates Gaming's first lien position against Sunrise Island to Ballard's lien.

▮ The Loan Transaction wherein Ballard loaned $500,000.00 to Sunrise in exchange for a first lien position against Sunrise Island was inherently a "conflict of interest" or "interested director" transaction. Lobato–Bleidt was a principal in both Gaming and Sunrise. Lobato–Bleidt negotiated the transaction on behalf of Sunrise and executed a Subordination Agreement on behalf of Gaming to subordinate Gaming's first lien position against Sunrise Island.

▮ The threshold inquiry in this matter is which state law applies to the Loan Transaction. Gaming is a Colorado corporation domesticated in Florida. Sunrise is a Florida general partnership. After the receiver was appointed to administer the assets of

---

1. On January 12, 1995, Robert Abraham was appointed receiver over the assets of Gaming in Volusia County, Florida.

Gaming on January 5, 1995, the Volusia County, Florida Court had jurisdiction over the assets of Gaming. The Sunrise note and Deed of Trust held by Gaming were assets within the jurisdiction of the Florida Court in the receivership proceeding. The State of Florida had a more significant relationship to conflict of interest transactions involving these assets than Gaming's state of incorporation, Colorado. *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 302(2); Fla. Stat. § 607.1432, 607.0832. Accordingly, after January 5, 1995, Florida law governs any conflict of interest transactions involving the Sunrise note and lien.[2]

Contracts entered into by an interested officer or director of a corporation are voidable at the election of the corporation when the contract is not properly authorized or is part of a scheme. *See McGourkey v. Toledo & Ohio C.R. Co.,* 146 U.S. 536, 13 S.Ct. 170, 36 L.Ed. 1079 (1892); 3 W.Fletcher, *Cyclopedia of Private Corporations,* §§ 913, 916, 917, 922, 923, 924, 925 (1994). Lobato–Bleidt, who entered into the Loan Transaction with Ballard, was clearly an "interested officer" when she subordinated the lien of Gaming and executed the note and lien and received the proceeds of the loan on behalf of Sunrise.

Under Florida law, a conflict of interest transaction is voidable by a corporation unless: (1) it is approved by a majority of the disinterested directors and shareholders of the corporation; or (2) it is approved by a majority of the directors and stockholders (whether or not disinterested) *and* the transaction was fair and reasonable to the corporation. Approval of the directors and shareholders and fairness must be established or the transaction is voidable. *See* Fla.Stat. § 607.0832 (1990); Colorado Business Corporation Act § 7–108–501; *Robert A. Wachsler, Inc. v. Florafax Intern. Inc.,* 778 F.2d 547, 552 (10th Cir.1985); 3 W.Fletcher, *Cyclopedia of Private Corporations* § 979 (1994). The Subordination Agreement and Loan Transaction executed by Lobato–Bleidt could not be approved by a majority of the disin-

terested directors of Gaming, since none of the directors of Gaming were disinterested.

The shareholders and directors of Sunrise did not approve the transaction. In addition, the Subordination Agreement and Loan Transaction were not fair and reasonable to the corporation because the subordination of Gaming's first lien position was given without consideration to Gaming. Instead, the loan proceeds were merely passed through Gaming to ultimately benefit Lobato–Bleidt. Also, the Subordination Agreement was not properly authorized by the receiver which had jurisdiction over the assets and affairs of Gaming. This authorization was required in addition to the requirements of § 607.0832 of the Florida Business Corporation Act pursuant to the Order of the Florida Court dated February 23, 1995. *See* Fla.Stat. § 607.1432.

Lobato–Bleidt, or in this case, Ballard, who received his interest in Sunrise Island from Lobato–Bleidt, has the burden of establishing the fairness of the Subordination Agreement and the Loan Transaction to Gaming. *See Robert A. Wachsler Inc. v. Florafax Intern., Inc.,* 778 F.2d 547, 551 (10th Cir.1985); 3 W.Fletcher, *Cyclopedia of Private Corporations* § 921 (1994). As stated above, the transaction was not fair to Gaming because the loan proceeds were passed through to Lobato–Bleidt instead of being retained for the benefit of Gaming. Ballard failed to meet his burden of proof with respect to the fairness of the transaction. *See* Fla.Stat. § 607.0832 (1990); 3 W. Fletcher, *Cyclopedia of Private Corporations* § 931 (1944).

Ballard had a duty to inquire regarding the validity of the conflict of interest transaction involving Gaming's Subordination Agreement. Ballard had constructive knowledge of Lobato–Bleidt's lack of authority. *See In re Branding Iron Motel, Inc.,* 798 F.2d 396, 401 (10th Cir.1986); *Schmidt v. Farm Credit Services,* 977 F.2d 511 (10th Cir.1992). The burden is on Ballard to establish that a reasonable investigation would

2. These transactions do not constitute "internal matters" requiring application of Colorado law.

*See* Fla.Stat. § 607.1505.

have failed to disclose the lack of authority by Lobato–Bleidt to execute the Subordination Agreement. *See Robert A. Wachsler Inc. v. Florafax Intern., Inc.,* 778 F.2d 547, 551 (10th Cir.1985); 3 W.Fletcher, *Cyclopedia of Private Corporations* § 921 (1994). Ballard testified that he did not inquire about the validity of the transaction—he made no inquiries with respect to Lobato–Bleidt's apparent conflict with respect to the Subordination Agreement. Again, Ballard has failed to meet his burden of establishing that a reasonable investigation would have failed to disclose Lobato–Bleidt's lack of authority in executing the Subordination Agreement.

■ Ballard contends that the Subordination Agreement and Loan Transaction were fair to Gaming because of an alleged "debt for equity" transaction which occurred between Gaming and Sunrise sometime in 1995. Gaming, in this transaction, purportedly reduced Sunrise's debt by $1,000,000.00 in exchange for $1,000,000.00 of equity in Sunrise. Lobato–Bleidt executed the documents on this transaction without the authority of the receiver.

Ballard's reliance on this transaction is without merit because the purported "debt for equity" transaction was a sham transaction. The transaction allegedly occurred after the Receiver was appointed and yet it was not approved by the Florida Court. In addition, the "debt for equity" transaction is also a conflict transaction executed by Lobato–Bleidt. As stated above, the approval and fairness requirements necessary to overcome the voidability of a conflict transaction were not met.

In conclusion, the uncontested facts establish that Lobato–Bleidt was in a classic conflict of interest position in executing the Subordination Agreement and entering into the Loan Transaction with Ballard. The transaction was not approved by disinterested directors or by the shareholders and was inherently unfair to Gaming. Gaming may therefore void the transaction. Accordingly, Gaming is entitled to summary judgment on its Third Claim for Relief pursuant to Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056. The June 9, 1995 Subordination Agreement is void and Gaming's Deed of Trust lien has priority over the Deed of Trust lien of Ballard. *See Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1521 (10th Cir.1992).

A separate Judgment Order will be entered consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**