Rick EGNATIC, et al., Appellants,

v.

Chris NGUYEN, et al.; Defendant;

Allstate Insurance Company,
Respondent.

No. WD 61873.

Missouri Court of Appeals,
Western District.

July 29, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 2, 2003.

William L. Carr, Kansas City, MO, for Appellants, Jacquelyn Egnatic and Benjamin Pickert.

Robert H. Houske, Kansas City, MO, for Appellant, Rick Egnatic.

Michael E. McCausland, Kansas City, MO, for Respondent, AllState Insurance Co.

Chris Nguyen, for Defendant.

Before ROBERT G. ULRICH, P.J., VICTOR C. HOWARD and THOMAS H. NEWTON, JJ.

ROBERT G. ULRICH, Judge.

Jacquelyn Egnatic ("Ms.Egnatic") appeals the trial court's grant of summary judgment in favor of Allstate Insurance Company ("Allstate") in her action for payment under the uninsured and underinsured provisions of an auto insurance policy that she claimed was in force when she was injured during a motor vehicle accident. The judgment of the trial court is affirmed.

## Factual Background

In April 1998, Ms. Egnatic applied for and was issued an auto insurance policy from Allstate covering her 1998 Honda Civic and her 1990 Honda Accord.[1] She applied for the policy through Robert L. Davis, an Allstate agent, at his office located in Independence, Missouri. Ms. Egnatic was a resident of Kansas at the time that she applied for the policy.[2] She paid her first premium when she applied for the policy.

Allstate issued a Kansas auto insurance policy to Ms. Egnatic, effective April 15, 1998. Ms. Egnatic chose to pay the insurance premium via monthly installments of $127.00. Her second and third premium payments were due on May 15, 1998, and June 15, 1998, respectively. Allstate mailed a notice to Ms. Egnatic on May 25, 1998, stating that her May premium payment had not been received and that a minimum payment of $253.98 was required to keep her policy in force. Ms. Egnatic sent a payment on May 27, 1998, in the amount of $127.00 to Allstate. Allstate sent notice to Ms. Egnatic acknowledging receipt of the $127.00 payment and notifying her that an additional $130.48 was due on or before June 15, 1998, to avoid cancellation of her auto insurance policy.

During the month of May 1998, Ms. Egnatic lived at 629 Lake Forest, Bonner Springs, Kansas. Her mail was delivered to the Lake Forest post office. Ms. Egnatic married Rick Egnatic ("Mr.Egnatic") on June 3, 1998. She began relocating her residence to 4237 North 123rd Terrace, Kansas City, Kansas, around June 6, 1998. The relocation took a couple of weeks. Ms. Egnatic contacted the insurance agency around June 12, 1998, and spoke to LaRonda Ward ("Ms.Ward"), an employee of the insurance agency, about her name change. She claims that she told Ms. Ward about her address change during the same conversation. Ms. Ward testified that she did not submit an address change form to Allstate because Ms. Egnatic could not remember some of the details of her new address. Allstate mailed a cover letter and amended auto policy declaration to Ms. Egnatic on June 12, 1998, acknowledging the name change of the insured. These documents were mailed to Ms. Egnatic at the Bonner Springs address and contained a reminder that the cancellation notice sent to her on May 27, 1998, was still in effect. Ms. Egnatic did not make the June premium payment. Allstate cancelled her auto insurance policy on June 15, 1998, for nonpayment of premium.

Ms. Egnatic, Mr. Egnatic, and Benjamin Pickert[3] were injured in an auto accident in Kansas City, Missouri, on June 28, 1998, while occupants in Ms. Egnatic's 1998 Honda Civic. Thomas Jones, Ms. Egnatic's attorney, contacted Ms. Ward on June 30, 1998, to provide her with notice of the accident. Rebecca Beasley, Ms. Egnatic's

1. At the time that Ms. Egnatic applied for the insurance policy, her name was Ms. Pickert. Subsequent to the issuance of the policy, she was married. Egnatic is her married name.

2. Ms. Egnatic continues to be a resident of Kansas.

3. Benjamin Pickert is Ms. Egnatic's son.

sister-in-law, contacted Ms. Ward and discussed the accident with her on July 1, 1998. Ms. Beasley testified that Ms. Ward told her that the policy had gone into cancellation mode but was not cancelled yet and that the policy would cover the accident if a check for $130.48 were overnighted to the insurance company. The check was accepted and deposited by Allstate on July 3, 1998. On July 6, 1998, Allstate sent Ms. Egnatic a notice of reinstatement effective July 3, 1998. The notice stated that the policy had lapsed from June 15 to July 3, 1998. On July 8, 1998, Allstate mailed an amended auto policy declarations to Ms. Egnatic indicating a change in the named insured's address and a change in the insured's rating territory.

After being released from the hospital, Ms. Egnatic contacted the Robert L. Davis agency regarding insurance coverage for the accident.[4] Ms. Ward referred Ms. Egnatic to the Allstate 1–800 customer service number. Upon calling that number, Ms. Egnatic spoke to Allstate representative Bob Holliman and was told by him that the June 28, 1998, accident was not covered by Allstate because the policy had lapsed on June 15, 1998, for nonpayment of premium.

Allstate mailed an automobile insurance bill to Ms. Egnatic on July 24, 1998, showing a balance of $255.12 due on or before August 15, 1998. The back of the notice contained a box titled "transaction history from 5/25/98 to 7/24/98." The entry dated 7/7/98 was designated as "premium credit of $74.60." This entry corresponds to a lapse credit in the premium that was granted to Ms. Egnatic on Allstate's computerized business records.

Ms. Egnatic, Mr. Egnatic, and Mr. Pickert (collectively "Plaintiffs") filed suit in Jackson County, Missouri, against Allstate for payment under the uninsured and underinsured provisions of the policy. Plaintiffs later filed an amended petition. In its Answer to Plaintiffs' amended petition, Allstate raised as a defense that the insurance policy was cancelled on June 15, 1998, and not in force on June 28, 1998, the date of the accident. Both parties filed summary judgment motions. The trial court granted summary judgment in favor of Allstate and denied Plaintiffs' motion for reconsideration on September 5, 2002. This appeal followed.

Ms. Egnatic raises two points on appeal. She first contends that the trial court erred in granting summary judgment to Allstate because the evidence was insufficient for summary judgment purposes in that whether Allstate complied with its own cancellation and reinstatement procedures was subject to more than one reasonable and differing interpretation, thereby precluding summary judgment. In her second point on appeal, Ms. Egnatic claims that the trial court erred in granting summary judgment to Allstate because she presented evidence that Allstate forfeited the premium payment requirement for coverage in that LaRonda Ward, an employee of the Robert L. Davis agency, acted as an agent for Allstate on July 1, 1998, when she made specific assurances to Ms. Egnatic's sister-in-law that policy coverage for the accident would result if the unpaid $130.48 premium were received the next day via overnight mail. She claims that Allstate ratified LaRonda Ward's conduct by cashing the check sent by overnight mail without reservation.

4. Ms. Egnatic continued to receive mail at the Bonner Springs address after the accident. She did not complete a postal service change of address form until she returned home from the hospital.

## Standard of Review

Appellate review of the grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* (citations omitted).

Summary judgment will be upheld on appeal if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 377. Facts contained within an affidavit or otherwise in support of a party's response are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* at 376. A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action, (2) the nonmovant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the nonmovant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.*

## Choice of Law

The trial court ruled that Kansas law governed the outcome of this case. Ms. Egnatic's brief cites both Kansas and Missouri law in support of both her points on appeal. Throughout her brief, Ms. Egnatic notes that Missouri law is persuasive on her issues on appeal. Her subtle references to the inapplicability of Kansas precedent suggest that Ms. Egnatic believes that the trial court erred in determining that the insurance policy should be governed by Kansas law. Rather, she implies that the trial court should have applied Missouri law. For that reason, the first issue addressed in this opinion is whether the trial court erred in determining that Kansas law controlled the outcome in this case.

■ Missouri has adopted sections 188 and 193 of the *Restatement (Second) of Conflict of Laws* (1971) in determining choice of law issues as they relate to insurance contracts. *Hartzler v. Am. Family Mut. Ins. Co.*, 881 S.W.2d 653, 655 (Mo. App. W.D.1994) (citing *Crown Ctr. Redevelopment Corp. v. Occidental Fire & Cas. Co.*, 716 S.W.2d 348, 358 (Mo.App.1986)). Section 188 provides that the "most significant relationship" determines the choice of law rules to follow. *Superior Equip. Co. v. Maryland Cas. Co.*, 986 S.W.2d 477, 480–81 (Mo.App. E.D.1998). In the context of an insurance contract, section 193 provides that "the principal location of the insured risk is given greater weight than any other single contact in determining the state of applicable law provided that the risk can be located in a particular state." *Sheehan v. Northwestern Mut. Life Ins. Co.*, 44 S.W.3d 389, 397 (Mo.App. E.D.2000) (citing Restatement (Second) of Conflict of Laws Section 193; *Atlas Intermodal Trucking Serv., Inc. v. United Fire & Cas. Co.*, 973

S.W.2d 174, 178 (Mo.App. E.D.1998)).[5] The principal location of the insured risk is defined by comment b to section 193 of the *Restatement* as "the state where it will be during at least the major portion of the insurance period." *Hartzler*, 881 S.W.2d at 655. In the case of an automobile liability policy, this is where the vehicle will be garaged during most of the insurance period. *Id.*

■ The principal location of the insured risk is Kansas because Kansas is the state where the insured vehicles were during the major portion of the insured period. The vehicles were operated and garaged in Kansas. Ms. Egnatic was a resident of Kansas at the time she negotiated and contracted for the insurance policy as well as at the time of the accident. The insurance policy was a Kansas policy covering vehicles registered in Kansas. The cover page of the policy states that it is a Kansas policy consisting of Kansas Auto Insurance Policy form AU115–2 and Kansas Amendatory Endorsement form AU1928–2. Provisions throughout the policy make reference to Kansas law by including phrases such as "required by Kansas law" and reference to the "Kansas Automobile Injury Reparations Act." The only factors favoring application of Missouri law to the insurance policy are the contract being negotiated in Missouri and the accident occurring in Missouri. At the time of negotiation, it is evident that the parties intended for and expected the policy to be a Kansas insurance policy covering Kansas vehicles. In balancing the contacts with each state, Kansas has the more significant relationship to the parties

and transaction with regard to the interpretation of the insurance policy. Because Kansas is the principal location of risk and has the more significant relationship to the transaction and parties, Kansas law governs this case. The trial court did not err in ruling that Kansas law applies to this case.

### Point I: Termination of the Insurance Policy

Ms. Egnatic asserts for her first point on appeal that the trial court erred in entering summary judgment for Allstate because the evidence regarding whether Allstate followed its cancellation procedures when attempting to either cancel the policy for nonpayment of premium or reinstate the policy when cashing Ms. Egnatic's late tender of the premium was subject to two different but equally plausible interpretations. She claims that Allstate's actions were inconsistent with its cancellation policies because it sent her notices stating that the policy was still in effect, had an effective date of April 15, 1998, and to contact her agent if she had any questions or concerns. Ms. Egnatic contends that Allstate waived the cancellation of her policy for nonpayment of premium by accepting her July 2, 2003, late payment after learning of her accident. She also asserts that Allstate failed to follow its reinstatement procedures by failing to send her a reinstatement notice.

Ms. Egnatic contends that the trial court erred in relying on *Bell v. Patrons Mutual Insurance Ass'n*, 15 Kan.App.2d 791, 816 P.2d 407 (1991) in finding that

---

5. Section 193 of the *Restatement* provides:
 The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined *by the local law of the state which the parties understood was to the be principal location of the insured risk* during the term of the policy, unless with

respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.
(Emphasis added).

Allstate complied with its cancellation procedures when it cancelled her insurance policy for nonpayment of premium.[6] She claims that the trial court erred in relying on *Bell* because Allstate's conduct, unlike the insurer in *Bell*, remained the same after it cancelled her insurance policy, namely that it sent her correspondence stating that the effective date of her coverage was April 15, 1998, and to contact her agent if she had any questions or concerns. Allstate counters that the listed effective date sets forth the beginning of the policy period and remained the same because it reinstated Ms. Egnatic's policy on July 3, 1998, rather than issue her a new policy. Ms. Egnatic's argument lacks merit because nothing in *Bell* states that correspondence received from an insurance company with a specific effective date of coverage equates insurance coverage notwithstanding cancellation language contained within the same correspondence. Not only does *Bell* not stand for this proposition, but Ms. Egnatic fails to cite any Kansas precedent that supports her proposition.

Ms. Egnatic asserts that a crucial difference between *Bell* and the present case is that in *Bell*, the insurer did not present for payment the insured's premium payment check after canceling the insured's policy. A key difference between the present case and *Bell* is that the insured in *Bell* claimed to have left a check above the door of the insurance agency. *Id.* at 408. The check was never seen again. *Id.* The insurer never had the opportunity to deposit the check because it never received it. *Id.* Thus, Ms. Egnatic's reliance on *Bell* is misplaced.

In the present case, Allstate cancelled Ms. Egnatic's insurance on June 15, 1998, for nonpayment of premium, and Ms. Egnatic had received notice that the policy would be cancelled absent payment of premium before the cancellation date. The premium was not paid before the cancellation date. Ms. Egnatic was involved in an automobile accident on June 28, 1998. Ms. Egnatic paid a premium after the accident occurred. On July 3, 1998, Allstate presented for payment Ms. Egnatic's premium payment check. Ms. Egnatic claims that Allstate's action in depositing her late tender of the premium payment constituted a waiver of its cancellation of her policy. Allstate counters that it deposited the check so that it could reinstate Ms. Egnatic's insurance policy. Ms. Egnatic cites *Hennessey v. Dairyland Insurance Co.*, 904 S.W.2d 73 (Mo.App. E.D.1995) to support her argument. The *Hennessey* court held that an insurance company's acceptance of a late premium constituted a waiver of the cancellation of the policy. *Id.*, at 76 (quoting *Mitchell v. Farmers Ins. Exch.*, 396 S.W.2d 647, 652 (Mo.1965)). *Hennessey* is inapposite to point one of this case because it is based on Missouri law. Because Kansas law governs this case, it is necessary to examine Kansas law on this issue.

In Kansas, an insurance policy cancellation and a lapse of the policy are distinguished. *Unruh v. Prudential Prop. & Cas. Ins. Co.*, 3 F.Supp.2d 1204, 1206 (D.Kan.1998) (citations omitted). "[W]hen the insurer acts to terminate a policy during its term, the policy has been cancelled; when the insured fails to pay a renewal premium before the policy expiration date, however, the policy has lapsed." *Id.* In

---

**6.** Ms. Egnatic's argument actually contends that Allstate erred in relying on *Bell*. An appellate court reviews trial court error only. For that reason, we assume that it was an oversight on Ms. Egnatic's part to address this argument as Allstate's error and not the trial court's.

this case, Allstate acted to cancel the policy so a cancellation occurred. K.S.A. § 40–3118(b) provides, in relevant part:

Except as otherwise provided in K.S.A. 40–276, 40–276a, 40–277, and amendments thereto, and *except for termination of insurance resulting from nonpayment of premium* or upon the request for cancellation by the insured, no motor vehicle liability insurance policy, or any renewal thereof, shall be terminated by cancellation or failure to renew by the insurer until at least 30 days after mailing a notice of termination, by certified or registered mail or United States post office certificate of mailing, to the named insured at the latest address filed with the insurer by or on behalf of the insured.

(Emphasis added). The statute, by its terminology, does not apply to the termination of a policy for nonpayment of premiums. In that situation, the terms of the insurance policy govern such a cancellation. Ms. Egnatic's policy contained the following provision:

Allstate may cancel part or all of this policy by mailing notice to you at your last known address. If we cancel because you did not pay the premium, the date of cancellation will be at least 10 days after the date of mailing the notice. Mailing the notice will be proof of notice.

The policy language is clear and unambiguous. "[W]here a policy is 'clear and unambiguous, the words are taken and understood in their plain, ordinary and popular sense, and there is no need for judicial interpretation or application of the rules of liberal construction; the court's function is to enforce the contract according to its terms.'" *Premsingh v. UNUM Life Ins. Co.*, 929 F.Supp. 1391, 1395 (D.Kan.1996) (quoting *Goforth v.*

*Franklin Life Ins. Co.*, 202 Kan. 413, 449 P.2d 477, 481 (1969)). Here, Allstate mailed three separate notices to Ms. Egnatic stating that her insurance would be cancelled effective June 15, 1998, if she failed to pay her premium by that date. A notice was sent on May 25, 1998, stating that Ms. Egnatic needed to pay $253.98 to keep her policy in effect, otherwise it would be cancelled effective June 15, 1998. A second notice was mailed on May 29, 1998, stating that $130.48 was needed to keep the policy from being cancelled on June 15, 1998. A third and final notice was sent on June 12, 1998, stating that the cancellation mailed to her was still in effect. Allstate's conduct in mailing three separate notices of the cancellation was proof of notice under the terms of the policy, Kansas precedent,[7] and Kansas statute. Ms. Egnatic conceded, moreover, in her deposition that she never made a June premium payment. Neither the policy nor the statute required Ms. Egnatic to have actually received or read the mailed notice of cancellation. *See also Feldt v. Union Ins. Co.*, 240 Kan. 108, 726 P.2d 1341, 1343 (1986) (holding that K.S.A 40–3118(b) does not mandate the insurer to provide proof of actual receipt by the insured). Accordingly, no genuine issue of material fact exists regarding whether Ms. Egnatic received the cancellation notices.

Ms. Egnatic next claims that a genuine issue of material fact exists whether Allstate mailed the reinstatement notice in compliance with the insurance policy. She claims that her testimony that she never received a reinstatement notice entitles her to an inference that Allstate unconditionally cashed her premium check after receiving notice of the accident. She claims that the absence of a reinstatement notice constitutes proof that Allstate never

---

7. *Bell,* 816 P.2d at 408.

intended to reinstate coverage but rather intended for no gap to exist in Ms. Egnatic's insurance coverage. Ms. Egnatic further asserts that the trial court erred in entering summary judgment in favor of Allstate because such an entry depended upon an inference that Allstate sent a reinstatement notice to Ms. Egnatic.

Allstate's duty was to mail the notice to Ms. Egnatic's address. *Feldt*, 726 P.2d at 1343. It did not have a duty to ensure that she actually received the notice. *Fed. Kemper Life Assurance Co. v. Ellis*, 28 F.3d 1033, 1039 (10th Cir.1994) (citing *Feldt*, 726 P.2d at 1343). Accordingly, the trial court's function was to determine if a material issue of fact existed regarding whether the notice was mailed.

■ The evidence at trial established that Allstate sent Ms. Egnatic a reinstatement notice. Allstate provided a copy of its computerized business records reflecting that it had sent a reinstatement notice to Ms. Egnatic on July 6, 1998, stating that her insurance coverage was cancelled on June 15, 1998, and reinstated on July 3, 1998. The custodian of records at Allstate testified that reinstatement notices are computer generated and copies of the reinstatement notices are not archived. "Proof of customary and usual computer procedures is sufficient to show adherence to usual and customary procedures of proper mailing." *Id.* at 1040 (citations omitted). The record reflected that on July 24, 1998, Allstate sent Ms. Egnatic an invoice showing a premium credit of $74.60. The premium credit reflected the amount of insurance premium owed to Ms. Egnatic due to the cancellation of her insurance policy on June 15, 1998. Not only did the July 24, 1998, notice reflect the fact that Ms. Egnatic received a premium credit but by her own testimony Ms. Egnatic admitted that Bob Holliman, an Allstate representative, told her that the June 28,

1998, accident would not be covered due to cancellation of the policy for nonpayment of premium.

Ms. Egnatic argues that her testimony that she never received the reinstatement notice rebuts the presumption that the notice was mailed and creates a genuine issue of material fact. The policy required only that Allstate mail the reinstatement notice. Ms. Egnatic's denial of receipt does not create a genuine issue of material fact as to whether the notice was mailed. The record established that Allstate mailed the notice. Because Ms. Egnatic's denial of receipt of the reinstatement notice is insufficient, by itself, to create a genuine issue of material fact as to whether the notice was mailed, and considering the undisputed evidence that notice was mailed to the address provided Allstate by Ms. Egnatic, the trial court properly granted summary judgment on this issue. Point one denied.

### Point II: Agency

In her second point on appeal, Ms. Egnatic claims that the trial court erred in granting summary judgment to Allstate because the evidence that she presented established that Allstate forfeited the premium payment requirement for coverage in that LaRonda Ward, Office Manager for the Robert L. Davis Agency, made specific assurances to Ms. Egnatic's sister-in-law on July 1, 1998, that the insurance policy would cover the June 28, 1998, accident if she sent the premium via overnight mail. She contends that an agency relationship existed between Ms. Ward and Allstate. Ms. Egnatic asserts that Allstate ratified Ms. Ward's conduct by cashing the check without reservation. Allstate counters that Ms. Ward was only an employee of the Robert L. Davis Insurance Agency and as such had neither actual nor apparent authority to modify the insurance policy on

behalf of Allstate. Allstate additionally contends that the trial court erred in applying Kansas law to Ms. Egnatic's second claim. It contends that Missouri law governs analysis of point two because all of Ms. Ward's actions took place in Missouri.

■ Before addressing the merits of Ms. Egnatic's second point on appeal, determination is made of whether Kansas law governs her second claim. Section 292 of the *Restatement (Second) of Conflict of Laws* determines the choice of law that governs agency and in particular, the contractual liability of a principal to a third person. It provides:

(1) Whether a principal is bound by action taken on his behalf by an agent in dealing with a third person is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties ...

(2) The principal will be held bound by the agent's action if he would so be bound under the local law of the state where the agent dealt with the third person, provided at least that the principal had authorized the agent to act on his behalf in that state or had led the third person reasonably to believe that the agent had such authority.

The evidence established that most of the communication between Ms. Ward and Ms. Egnatic occurred by telephone. Comment e to section 292 of the *Restatement* addresses this situation and provides:

e. *State where agent dealt with third person.*

Usually the agent and third person will have been in the same state when they negotiated and made their agreement.... On occasion, the agent and the third person will have acted in different states, as may be true in a situation where they conduct their negotiations by mail or over the telephone. In such a situation, the principal will be held bound under the local law of *either the state where the agent or the third person acted* provided that the principal authorized, or had led the third person reasonably to believe that the agent was authorized to act on his behalf in either state....

(Emphasis added). Comment e provides that the local law of either Missouri, the state where Ms. Ward acted, or Kansas, the state where Ms. Egnatic acted, governs. Because most of Ms. Egnatic's actions took place in Kansas, it is appropriate for Kansas law to govern point two. Kansas law will determine whether Allstate is bound by Ms. Ward's actions.[8] The trial court did not err in holding that Kansas law governed whether an agency relationship existed between Ms. Ward and Allstate.

Both Ms. Egnatic and Allstate cite several Missouri cases as support for their claims under point two of their briefs. Because Kansas law governs the analysis of point two, none of the Missouri case law cited by either party is addressed.

Ms. Egnatic claims that Allstate waived the default provisions of the insurance policy when it accepted her premium payment on July 2, 1998, after receiving notice of her accident. She cites *Modern Woodmen of America v. Jameson*, 48 Kan. 718, 30 P. 460, 461 (1892) for the proposition that coverage exists in Kansas when an insurer unconditionally accepts a late premium

---

**8.** The analysis under Missouri law would result in the same outcome as the analysis under Kansas law. *See Nichols v. Prudential Ins. Co. of Am.*, 851 S.W.2d 657, 661–65 (Mo. App. E.D.1993) (using the same agency principles as Kansas); *Euclid Plaza Assocs., L.L.C. v. African Am. Law Firm, L.L.P.*, 55 S.W.3d 446, 449 (Mo.App. E.D.2001) (same)).

payment after receiving notice of a loss on the policy. Ms. Egnatic misconstrues *Modern Woodmen.* In *Modern Woodmen,* an insurance company retained a late premium payment after receiving notice of the insured's death. *See id.* at 461. The *Modern Woodmen* court found that the insurance company was estopped from denying liability under these circumstances because retention of a premium payment by the life insurance company after receiving notice of the insured's death indicated its intent to provide coverage for the loss. *Id.*

In this case, Allstate cancelled the policy effective June 15, 1998, for nonpayment of premium. The policy was no longer in force when Ms. Egnatic had her accident. One of the provisions of the insurance policy between Ms. Egnatic and Allstate stated that Allstate was not obligated to perform any of the provisions of the policy unless Ms. Egnatic's premiums were paid when due and she complied with the terms of the policy. *See Eikelberger v. Ins. Co. of N. Am.,* 105 Kan. 675, 189 P. 139, 141 (1919) (noting that there is "nothing unreasonable" about such a provision). Ms. Egnatic's default in premium payments resulted in Allstate canceling the policy on June 15, 1998, for nonpayment of premium. Once the policy was cancelled, Allstate was no longer obligated to cover any loss occurring after the policy was cancelled. Her subsequent July 2, 1998, payment reactivated the policy as of the date of payment and not during the period of lapse. *Id.* at 141 (holding that the restoration of the insurance policy began with the date of payment).

 Not only was Allstate not obligated to cover the loss occurring during the period of lapse, it was also not bound by Ms. Ward's representations to Ms. Egnatic that the accident would be covered. As discussed below, Ms. Ward was not a general agent of Allstate. In Kansas, no-

tice of a loss to an agent of limited powers does not bind the agent's principal on matters wholly unrelated to that agent's powers. *Id.*

A local soliciting agent without authority to write or issue policies, but who merely procures applications, collects premiums, and sometimes delivers policies when payments are made, is not a general agent of the insurer, and his knowledge that other insurance has been subsequently taken is not chargeable to the insurer; nor did the insurer herein in any way waive or abrogate the condition which was violated by the insured.

*Id.* (quoting *Pettijohn v. St. Paul Fire & Marine Ins. Co.,* 100 Kan. 482, 164 P. 1096, 1096 syl. 2 (Kan.1917)). Whether Ms. Ward represented to Ms. Beasley, Ms. Egnatic's sister-in-law, that the accident would be covered by Allstate if the past due premium were received on July 2, 1998, is irrelevant because Ms. Ward was not a general agent of Allstate. Even if Ms. Ward made such a representation to Ms. Beasley it would not bind Allstate under Kansas law because Ms. Ward was not a general agent of Allstate.

### A. Ms. Ward's Authority to Modify the Insurance Policy

Ms. Egnatic asserts that Ms. Ward represented to Rebecca Beasley, Ms. Egnatic's sister-in-law, on July 1, 1998, that the cancelled policy would cover the June 28, 1998, accident if she sent a premium payment via overnight mail so that it reached Ms. Ward on July 2, 1998. She claims that Ms. Ward was an agent of Allstate and as such had the authority to alter the terms of the insurance policy and to bind Allstate.

 As the party asserting agency, Ms. Egnatic bears the burden of establishing its existence by clear and satisfactory evidence. *Cattle Fin. Co. v. Boedery, Inc.,*

795 F.Supp. 362, 367 (D.Kan.1992) (citing *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 401 (10th Cir.1986)). In Kansas, two types of agency exist: (1) actual and (2) ostensible or apparent. *In the Matter of Scholastic Book Clubs, Inc.*, 260 Kan. 528, 920 P.2d 947, 952 (1996). Agency law in Kansas has been summarized by the Kansas Supreme Court as follows:

> The law recognizes two distinct types of agencies, one actual and the other ostensible or apparent. The authority of an actual agent may be either express or implied. It is an express agency if the principal has delegated authority to the agent by words, which expressly authorize the agent to do a delegable act. It is an implied agency if it appears from the statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal. An ostensible or apparent agency may exist if a principal has intentionally or by want of ordinary care induced and permitted third persons to believe a person is his or her agent even though no authority, either express or implied, has been actually conferred upon the agent.

*Dealers Leasing, Inc. v. Allen*, 26 Kan. App.2d 745, 994 P.2d 651, 658 (1999) (quoting *Shawnee State Bank v. N. Olathe Indus. Park, Inc.*, 228 Kan. 231, 613 P.2d 1342, 1347 (1980)). "An agency does not exist merely 'because a third person assumed it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make an agency seem rational and probable....'" *Cattle Fin. Co.*, 795 F.Supp. at 367 (quoting *Highland Lumber Co. v. Knudson*, 219 Kan. 366, 548 P.2d 719, 723 (1976)).

### 1. Actual Agency

#### a. Express Authority

■ "To determine whether the evidence was sufficient to demonstrate actual agency, the record must be examined to ascertain if the one sought to be charged as principal has delegated authority to the alleged agent by words which expressly authorize him or her to do the delegated act." *Rodgers v. Arapahoe Pipe Line Co.*, 185 Kan. 424, 345 P.2d 702, 707 (1959) (citing *Greep v. Bruns*, 160 Kan. 48, 159 P.2d 803, 808 (1945); 2 C.J.S. Agency § 23, p. 1045)). In this case, the evidence established that Allstate did not grant Ms. Ward express authority to alter the terms of the insurance policy. Specifically, the Allstate Agent Employment Agreement was between Allstate and Robert L. Davis. Such an agreement between Allstate and Ms. Ward did not exist. The agreement between Mr. Davis and Allstate contained the following provisions:

> 6. Operation of Business
>
> [Allstate] shall determine in its sole discretion all matters relating to its business and the operation of [Allstate], including, but not limited to the following:
>
> a. The determination of *contract forms and provisions*, premiums, fees and charges for insurance and other [Allstate] business;
>
> b. The acceptance or rejection of any application or the termination, *modification* or refusal to renew any contract, subject to its terms;
>
> 7. Limited Authority
>
> You agree that you will not represent yourself as having any authority other than that specifically granted to you by [Allstate]. *You acknowledge that you will not alter any contract* or incur any expense or obligation *for*

*[Allstate] without prior written approval from [Allstate].*

(Emphasis added). The terms of the Agent Employment Agreement granted Allstate the exclusive right to modify any insurance policy. Neither Mr. Davis nor Ms. Ward had the right to modify any insurance policy. Any alteration made by Mr. Davis had to be approved by Allstate in writing. As the office manager of the Robert L. Davis agency, Ms. Ward did not have express authority from Allstate to act on its behalf as an agent. Even if Ms. Ward had had express authority to act on behalf of Allstate, her representations to Ms. Beasley, Ms. Egnatic's sister-in-law, would not have been binding against Allstate because Allstate did not approve, in writing, her modification of the policy.

### b. Implied Authority

■ Having determined that Allstate did not grant Ms. Ward express authority to modify the terms of the insurance policy, whether she possessed implied powers to do the same is considered. "The test utilized by [Kansas courts] to determine if the alleged agent possesses implied powers is whether, from the facts and circumstances of the particular case, it appears there was an implied intention to create an agency, in which event the relation may be held to exist, notwithstanding either a denial by the alleged principal, or whether the parties understood it to be an agency." *Brown v. Wichita State Univ.,* 217 Kan. 279, 540 P.2d 66, 74 (1975) (citing *Rodgers,* 345 P.2d at 707–08), *vacated on other grounds by Brown v. Wichita State Univ.,* 219 Kan. 2, 547 P.2d 1015 (1976)). Implied agency is based on the principal's implied intention to create an agency. *Mohr v. State Bank of Stanley,* 241 Kan. 42, 734 P.2d 1071, 1076 (1987). It arises when it appears that the principal or the principal and agent intended to make it appear to third persons that the agent's acts were authorized by the principal:

> [T]he implication must arise from a natural and reasonable, and not from a forced, strained, or distorted, construction of [the facts]. They must lead to the reasonable conclusion that mutual assent exists, and be such as naturally lead another to believe in and to rely on the agency. The existence of the relation will not be assumed ... it is the manifestation of the alleged principal and agent as between themselves that is decisive, and not the appearance to a third party or what the third party should have known. An agency will not be inferred because a third person assumed that it existed....

*Id.* (quoting 2A, C.J.S., Agency, § 52, p. 626).

■ None of the facts in this case support a finding of implied agency. Allstate never intended for third persons to believe that Ms. Ward was an agent of Allstate or that she had the authority to modify the insurance policy. All of the correspondence sent to Ms. Egnatic by Allstate listed Robert L. Davis as her agent. Even if Ms. Ward intended to convey to Ms. Egnatic's sister-in-law that she was authorized to modify the policy by claiming that the accident, which occurred during the cancellation period, would be covered if Ms. Egnatic paid the late premium by July 2, 1998, her intention alone is insufficient to find that she had implied authority to do so. *See id.* Rather, the deciding factor is the intention of Allstate or the intention of both parties as between themselves and not the appearance to a third party. The fact that Ms. Egnatic assumed that such an agency existed is not enough to establish implied agency.

### 2. Apparent Authority

■ In the absence of actual authority, an agent's acts may be binding on

the principal if performed with apparent authority. An apparent agent has been defined by the Kansas Supreme Court as "one whom the principal has intentionally or by want of ordinary care induced third persons to believe to be his agent, although no authority has been conferred upon him, either expressly or by implication." *Cattle Fin. Co.*, 795 F.Supp. at 367 (quoting *In re Branding Iron Motel*, 798 F.2d at 401 (quoting *Greep*, 159 P.2d at 808)). Apparent agency is based on the principal's intentional actions or words, which reasonably induce or permit third parties to believe that an agency relationship exists. *Mohr*, 734 P.2d at 1076.

■ In this case, Allstate did not induce Ms. Egnatic by its actions or words to believe that Ms. Ward was an agent of Allstate and authorized to modify the terms of the insurance policy. Allstate took no action designating Ms. Ward as its agent. All of its correspondence to Ms. Egnatic indicated that Robert Davis was her agent. The record establishes that Ms. Egnatic was aware of the fact that Ms. Ward was the office manager of the Robert L. Davis agency. Ms. Egnatic's stated belief that the office manager of the agency was authorized to modify the insurance policy was not reasonable.

Ms. Egnatic did not change her position and will not be injured or suffer loss by reason of Ms. Ward's representations if Ms. Ward's actions are not deemed binding on Allstate. She is in the same position that she was in prior to Ms. Ward's representations, namely that the accident occurring on June 28, 1998, was not covered by insurance because her insurance policy was not in effect from June 15, 1998, to July 2, 1998, due to her failure to pay the monthly premium. Ms. Egnatic claims that she relied on Ms. Ward's exercise of authority and actually believed that she possessed such authority to modify the

terms of the policy. In order for Ms. Egnatic to establish this element of apparent authority, she must establish that her reliance was reasonable. Because Allstate never represented to her that Ms. Ward was an agent acting on its behalf, Ms. Egnatic cannot demonstrate that her reliance was reasonable. Ms. Ward's statement to Ms. Egnatic, if made, that she had the authority to modify the policy is insufficient. Rather, Allstate had to manifest its consent to or permit Ms. Ward to exercise such authority.

The evidence established that Allstate did not make a direct expression to Ms. Egnatic identifying Ms. Ward as having authority to speak on its behalf. The majority of the correspondence sent to Ms. Egnatic referenced the fact that Robert L. Davis was her agent. Additionally, Ms. Egnatic's insurance policy indicted that her agent was Robert L. Davis. The record establishes that Allstate was unaware of Ms. Ward's representation to Ms. Egnatic that the policy would cover the accident even though it was not in effect at the time of the accident. It did not acquiesce to Ms. Ward's representations, which is evidenced by the fact that when Ms. Egnatic called Ms. Ward upon her release from the hospital, she was told by Ms. Ward to call the Allstate 1–800 customer service line. Upon calling the customer service line, Ms. Egnatic was told by Bob Holliman that the accident would not be covered because the policy was not in effect at the time the accident occurred. Similarly, Ms. Ward's position as officer manager of the Robert Davis insurance agency did not confer agency status upon her. Allstate did not hold Ms. Ward out to Ms. Egnatic as being its insurance agent.

Allstate's actions would not have caused a reasonable person to conclude that Ms. Ward had been granted authority by Allstate to modify the terms of the insurance

policy by agreeing to cover an accident that occurred during the period when Ms. Egnatic's policy was not in effect. Ms. Egnatic's believing that Ms. Ward was her insurance agent and not an employee of the agency was not reasonable. Nor was it reasonable for Ms. Egnatic to believe that the insurance coverage would remain in effect after she failed to pay her June 1998 premium. Likewise unreasonable was Ms. Egnatic's belief that Allstate would cover an accident occurring during a time period when her policy was not in effect. If insuring vehicular accidents post event were Allstate's practice, no one would purchase insurance until after the need had occurred and the concept of insurance would cease to exist. Ms. Egnatic has failed to establish that Ms. Ward had any authority, apparent or otherwise, to alter the terms of the insurance policy in accordance with her representations to Ms. Beasley.

### B. Terms of the Insurance Policy

Ms. Egnatic entered into a contract with Allstate to provide coverage for two vehicles, a 1998 Honda Civic and a 1990 Honda Accord. Under the insurance agreement, Ms. Egnatic agreed to pay monthly insurance premiums in exchange for Allstate's agreement to provide insurance coverage. The evidence established that Ms. Egnatic was late in making her May 1998 premium payment. This prompted Allstate to send her three notices stating that her policy would lapse if she did not send her May premium payment and half of her June premium by June 15, 1998. The record reflected and Ms. Egnatic does not dispute that she never made a June 1998 payment. Allstate canceled Ms. Egnatic's policy on June 15, 1998, for nonpayment of premium. On June 28, 1998, Ms. Egnatic experienced a vehicular accident. Ms. Egnatic reinstated her insurance policy on July 3, 1998, by paying the premium required to

commence coverage. Because Ms. Egnatic's accident occurred during the period in which her policy was cancelled, Allstate denied coverage.

Ms. Egnatic claims that Ms. Ward's representations to her sister-in-law should supersede the terms of the insurance policy. Specifically, Ms. Egnatic contends that Ms. Ward told her sister-in-law that it was her opinion that the insurance policy should cover the accident even though the accident occurred when the policy was not in effect. The first paragraph of the insurance policy provides, in pertinent part:

GENERAL

If you, [the insured], pay premiums when due and comply with the policy terms, Allstate, relying on the information you have given us, makes the following agreements with you:

When And Where the Policy Applies

Your policy applies only during the policy period. During this time, it applies to losses to the auto, accidents, and occurrences within the United States of America, its territories or possessions or Canada, or between their ports.

Policy Period; Territory

This coverage applies to accidents, which occur during the policy period with respect to an eligible injured person in the state of Kansas.

By the terms of the policy, Allstate agreed to provide insurance coverage to Ms. Egnatic for any accident that occurred during the policy period as long as she paid the insurance premiums when they were due. Ms. Egnatic failed to comply with the insurance policy when she failed to timely pay the May premium and then failed to pay the required premium by the later date permitted by Allstate. Not only did she make her May 1998 payment later than the extended date, she also failed to make any June 1998 premium payment.

Although the original policy period was from April 15, 1998, to October 15, 1998, Ms. Egnatic's failure to pay the June premium resulted in the policy being terminated on June 15, 1998. Thus, the policy period ran from April 15, 1998 to June 15, 1998. The accident for which Ms. Egnatic seeks coverage occurred on June 28, 1998. Because the accident did not occur during the policy period, Allstate was not obligated to provide coverage for the accident.

■ The custom and practice in the automobile insurance industry is to insure accidents that occur during the policy period. Ms. Egnatic has provided no evidence that the custom of the insurance industry is to provide coverage outside of the policy period. The whole concept behind an automobile insurance policy is to insure events that occur after the policy has been activated. Here, Ms. Egnatic's policy was cancelled on June 15, 1998, and reinstated on July 3, 1998. Any accidents occurring during this cancellation period including the auto accident of June 28, 1998, are not covered.

## C. Ratification

■ Ms. Egnatic's final argument in her second point on appeal is that Allstate ratified Ms. Ward's conduct by cashing her premium payment without reservation on July 3, 1998. She claims that Allstate had full knowledge of the June 28, 1998, vehicular accident at the time that it cashed the premium payment. "Ratification is the adoption or confirmation by a principal of an unauthorized act performed on its behalf by an agent." *Foley Co. v. Scottsdale Ins. Co.*, 28 Kan.App.2d 219, 15 P.3d 353, 357 (2000) (citing *Theis v. duPont, Glore Forgan Inc.*, 212 Kan. 301, 510 P.2d 1212, 1215 (1973)). Once a principal receives notice of an unauthorized act performed by an agent, the principal must immediately repudiate the agent's action or it is presumed that the principal ratified the act. *Id.* As noted above, Allstate was unaware of Ms. Ward's representations to Ms. Beasley regarding the fact that the insurance premium payment would cover the accident. Even if Allstate had known of Ms. Ward's statements, that would not change the fact that the July 2, 1998, payment simply reinstated the policy and did not retroactively provide insurance coverage for the period from June 15, 1998, to July 2, 1998. The evidence established that Allstate's records indicate that it sent a reinstatement notice to Ms. Egnatic. It also credited her for the cancellation period from June 15, 1998, to July 2, 1998, (i.e. she was not charged for the period the policy was not in force). This was reflected in correspondence sent to Ms. Egnatic after her policy was reinstated. As discussed under point one, these events demonstrate that Allstate treated the July 2, 1998, payment as a reinstatement of the insurance policy. Because Allstate was unaware of Ms. Ward's representations to Ms. Egnatic and it treated the July 2, 1998, payment as a reinstatement, its cashing of Ms. Egnatic's premium check was not a ratification of Ms. Ward's conduct.

Ms. Ward's statements regarding retroactive insurance coverage do not create a genuine issue of material fact. Because Ms. Egnatic's reliance on Ms. Ward's representations was unreasonable, the trial court properly granted summary judgment. Point two is denied.

For the reasons stated in the opinion, the judgment of the trial court is affirmed.

All concur.